**Russell Lamar ESTES, Appellant**

v.

**The STATE of Texas, State**

**NO. 02-14-00460-CR**

Court of Appeals of Texas, Fort Worth.

DELIVERED: March 24, 2016

---

Brian Salvant, Adam L. Arrington, Fort Worth, Texas, Attorneys for Appellant.

Sharen Wilson, Criminal District Attorney; Debra A. Windsor, Chief of Postconviction; Steven W. Conder, Jacob Mitchell & Melinda Westmoreland, Assistant Criminal District Attorneys, Tarrant County District Attorney's Office, Fort Worth, Texas, Attorneys for State.

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

## OPINION

TERRIE LIVINGSTON, CHIEF JUSTICE

In ten issues, appellant Russell Lamar Estes appeals his convictions for five counts of sexual assault and two counts of indecency with a child by contact. He argues that a statutory provision that made his sexual assault convictions first-degree felonies rather than second-degree felonies is unconstitutional as it applies to him, that the trial court committed error during voir dire by sustaining the State's objection to a question that he posed to the jury panel, that the trial court abused its discretion by excluding certain evidence and by admitting other evidence, and that the trial court erred by not giving timely limiting instructions concerning certain evidence. We affirm the trial court's judgments of conviction for indecency with a child in all respects, modify the trial court's judgments on sexual assault to reflect convictions for second-degree felonies, reverse those judgments as to punishment, and remand the sexual assault cases to the trial court for a new trial on punishment.

## Background Facts

K.A. (Katie)[1] grew up in Saginaw, and while she lived there, she met J.E. (Jason).

---

1. To protect the identity of various people associated with this appeal, we will refer to

Katie's and Jason's families became friendly with each other. Eventually, when Katie and Jason were both in high school, Katie began regularly visiting and staying overnight at Jason's house.[2] Katie and Jason began a romantic relationship.

During Katie's trips to Jason's house, Jason's father, appellant,[3] began talking with her. For example, appellant commented on Katie's clothing and told her that she could confide in him. Katie thought that appellant was funny, smart, and kind, and she began to trust him. Appellant made Katie "feel safe."

When Katie first started spending nights at Jason's house, she slept on a couch in the living room. Appellant slept by himself in a room upstairs; his wife slept in a different room. Katie eventually began sleeping with appellant on a futon in his room. Her relationship with appellant became physical, One night while she was in his room, appellant rubbed her stomach and touched her sexual organ. When he had finished doing so, he told her to not tell anyone and said that she would not be believed if she did so.

After that occasion, over the course of approximately one year, appellant's touching of Katie's body continued and progressed. They had sexual intercourse on multiple occasions and engaged in other sexual acts with each other. On some occasions, appellant tied parts of Katie's body to the futon or to each other with leather before having sex with her. Once,

appellant used a paddle on Katie while having sex with her. Appellant showed Playboy magazines to Katie and told her that she could be a Playboy model.

When appellant and Katie had sexual encounters, he ensured that her phone was off and away from them; he feared that someone could be listening to what was occurring. After the encounters, appellant washed Katie's clothes, and she took showers.

During Katie's sophomore year in high school, she planned on staying at Jason's house for the entire week of spring break. One day while she was there, everyone in the house except for her and appellant went to a movie store. Appellant, who was drunk, took Katie into the bedroom where his wife slept. He told her that he wanted to perform oral sex on her. Appellant did so and also touched Katie's breasts for about a minute. Katie left the bedroom and walked into the kitchen, but appellant followed her, pushed her against a counter, told her that he loved her, and rubbed her sexual organ over her clothes. Appellant's roughness with Katie on that occasion scared her, and she began to disclose to her family that appellant had sexually abused her. Katie was fifteen years old at that time.

Katie's mother and step-father took her to the Saginaw Police Department (SPD). Katie was scared when speaking with the police because she "didn't ever want [appellant's sexual abuse of her to] come out."

---

them through pseudonyms. *See McClendon v. State,* 643 S.W.2d 936, 936 n. 1 (Tex.Crim. App. [Panel Op.] 1982). Katie was seventeen years old at the time of the trial. The facts within this section concerning appellant's acts against her are based on her testimony.

**2.** Katie's mother testified that she believed allowing Katie to stay overnight at Jason's house was acceptable because appellant had represented that there would be no opportuni-

ty for Katie and Jason to be alone together. Appellant also told Katie's mother that he had a breathing condition that limited his sleep and that he would therefore be able to "make sure that ... nothing happen[ed]" between Katie and Jason.

**3.** Appellant has three children, two of whom lived at his house during the time that Katie visited.

SPD Officer Tami McCluskey spoke with Katie. Officer McCluskey sent Katie to be physically examined by Barbara Ann Hynson (a sexual assault nurse examiner) and to be interviewed by Carrie Paschall (a forensic interviewer).[4] Katie told Hynson that she had been "sexually assaulted by her boyfriend's father for approximately the past year." She described specific instances of sexual abuse to Hynson.

Katie was talkative and emotional during the interview with Paschall. She told Paschall about appellant's sexual abuse of her and gave sensory and peripheral details concerning the abuse. After hearing what Katie said to Paschall, the police obtained an arrest warrant for appellant and a search warrant for his residence. Inside the residence, the police found, among other items, pieces of leather of various sizes, a whip, and sexually-oriented magazines.

When appellant realized that Katie had alleged that he had sexually abused her, he called the police. Joseph Bozenko, an SPD officer, received a dispatch and responded to the call. Appellant told Officer Bozenko that Katie had told Jason that on the prior Saturday night, appellant had become intoxicated and had touched Katie's breasts. Appellant admitted to Officer Bozenko that he had been drinking that evening and stated that he could not remember what had happened. He did not admit that he had touched Katie's breasts. To Officer Bozenko, appellant "seemed extremely nervous."

A grand jury indicted appellant with twenty-three charges, but the State proceeded to trial on the first seven charges, which included five counts of sexual assault and two counts of indecency with a child by contact. The five counts of sexual assault each included an allegation that because appellant was legally married, he was prohibited from marrying Katie or from living with her under the appearance of being married. Thus, under section 22.011(f) of the penal code, the indictment alleged that appellant had committed first-degree felonies with respect to the sexual assault charges.[5] Appellant filed a motion to quash the sexual assault charges, contending that section 22.011(f) is unconstitutional, facially and as applied to him, because it treats married people more harshly than unmarried people and therefore violates his due process and equal protection rights. Before the trial began, the trial court denied appellant's motion to quash. Appellant also filed many other pretrial documents, including an election for the jury to assess his punishment if he was convicted.

At trial, appellant pled not guilty to all of the charges. During the trial, appellant reurged his motion to quash, and the trial court again denied it. After receiving the parties' evidence and arguments, the jury found appellant guilty of five counts of sexual assault and two counts of indecency with a child by contact. The jury also found that Katie was a person whom appellant was prohibited from marrying or from living with under the appearance of being married.[6]

---

4. A forensic interview is, according to Paschall, an "investigative interview done with a child by someone who is ... specialized and trained in conducting those types of interviews in a nonleading, neutral, [and] nonsuggestive manner."

5. See Tex. Penal Code Ann. § 22.011(f) (West 2011) (stating that sexual assault is typically a second-degree felony but is a first-degree felo-

ny if "the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married").

6. In its closing argument concerning appellant's guilt, the State argued that appellant was prohibited from marrying Katie "because

The jury then heard more evidence concerning appellant's punishment and assessed twelve years' confinement on each sexual assault charge and ten years' confinement on each charge for indecency with a child by contact. For the charges concerning indecency with a child, the jury recommended appellant's placement on community supervision. The trial court sentenced appellant in accordance with the jury's verdicts in the sexual assault cases; the court ordered some of the sentences to run concurrently and others to run consecutively. The court followed the jury's recommendation and placed appellant on community supervision with respect to the charges for indecency with a child by contact; the court suspended the imposition of appellant's sentences for those charges. Appellant brought this appeal.

## Constitutionality of Section 22.011(f) As Applied

In his first issue, appellant contends that section 22.011(f) of the penal code is unconstitutional as the section applies to him. Specifically, he contends that the section violates his rights to due process and equal protection under the federal and Texas constitutions because it penalizes him for being married, treats him differently from an unmarried person who is otherwise similarly situated to him, and does not promote a compelling or rational state interest. Accordingly, appellant asks us to reverse his convictions for sexual assault under section 22.011(f) and dismiss the sexual assault counts of his indictment. The State argues that section 22.011(f) is constitutional.

Sexual assault is generally a second-degree felony. Tex. Penal Code Ann. § 22.011(f). Under section 22.011(f), however, the offense is a first-degree felony "if the victim was a person whom the actor was prohibited from marrying or purporting to marry or with whom the actor was prohibited from living under the appearance of being married." *Id.* The State alleged (and the jury found) that appellant's sexual assaults against Katie were first-degree felonies because appellant was legally married and was therefore prohibited from marrying or purporting to marry Katie. On appeal, appellant argues that "this statute is unconstitutional as applied to him because it treats married persons and unmarried persons differently and in effect punishes him for being married in violation of the Due Process and Equal Protection Clauses of the United States and Texas Constitutions."

As the challenger to the constitutionality of section 22.011(f), appellant has the burden to establish its unconstitutionality. *State v. Rosseau,* 396 S.W.3d 550, 557 (Tex.Crim.App.2013). An as-applied challenge to the constitutionality of a statute "asserts that a statute, although generally constitutional, operates unconstitutionally as to the claimant because of his particular circumstances. When reviewing the constitutionality of a statute, we presume that the statute is valid and that the Legislature acted reasonably in enacting it." *Faust v. State,* Nos. PD–0893–14, PD–0894–14, —— S.W.3d ——, ——, 2015 WL 8408544, at *6 (Tex.Crim.App. Dec. 9, 2015) (footnote omitted).

The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated shall be treated alike under the law. *See* U.S. Const, amend. XIV; *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 602, 128 S.Ct. 2146, 2153, 170 L.Ed.2d 975 (2008) (explaining that when "those who appear similarly situated are nevertheless treated differently,

he's already legally married, and that's pretty much it."

the Equal Protection Clause requires at least a rational reason for the difference"); *Rosseau*, 396 S.W.3d at 557; *Walker v. State*, 222 S.W.3d 707, 710 (Tex.App.–Houston [14th Dist.] 2007, pet. ref'd).[7] Generally, to prevail on an equal protection claim, the party complaining must establish two elements: (1) the party was treated differently than other similarly situated parties, and (2) the differential treatment does not have a rational governmental basis. *Downs*, 244 S.W.3d at 518; *see Rosseau*, 396 S.W.3d at 557 n. 7 (explaining that when no suspect classification or violation of a fundamental right is involved, a difference in treatment need be only rationally related to a valid public purpose to withstand equal protection scrutiny); *Wood v. State*, 18 S.W.3d 642, 650 (Tex. Crim.App.2000) ("The party challenging a statute on equal protection grounds bears the burden of showing that the statutory classification is not rationally related to a legitimate state interest, where interests

other than fundamental rights or suspect classification are affected.").[8]

A criminal defendant who attacks the rationality of a legislative classification has the burden to negate every conceivable basis that might support it. *Walker*, 222 S.W.3d at 711. The deferential rational-basis standard that typically applies to equal protection claims is "respectful of legislative determinations and essentially means a court will not invalidate a statute unless the statute draws distinctions that simply make no sense. Further, we will uphold a statute as long as it implements any rational purpose, even if the legislature never considered the purpose when enacting the statute." *Id.* (citation omitted).

The guarantee of equal protection may be violated when a penal statute "treats the same conduct differently based solely on the participants."[9] *Lawrence v.*

7. In *Rosseau,* the court of criminal appeals rejected a facial constitutional challenge to section 22.011(f) because the court concluded that the statute had "at least one valid application: the punishment of bigamists who sexually assault their purported spouses." 396 S.W.3d at 558. The court did not consider whether the statute was unconstitutional as applied to Rosseau. *Id.* at 554.

Appellant also relies on equal rights language within the Texas constitution but does not argue that the Texas constitution provides greater protection. *See* Tex. Const, art. I, § 3; *see also Nonn v. State,* 117 S.W.3d 874, 881–82 (Tex.Crim.App.2003) ("Under Article I, Section 3 of the Texas Constitution, and the Fourteenth Amendment to the U.S. Constitution, all persons similarly situated are guaranteed equal protection under the laws of this State and of the United States."). Thus, we will analyze his equal protection claim on federal grounds. *See Downs v. State,* 244 S.W.3d 511, 518 (Tex.App.–Fort Worth 2007, pet. refd); *see also Sonnier v. State,* 913 S.W.2d 511, 521 (Tex.Crim.App.1995) ("[T]o the extent we have addressed Article I, Section 3 we have found no broader protections

than those contained in the Fourteenth Amendment.").

8. Appellant argues that we should apply a higher review of strict scrutiny with respect to his equal protection claim because section 22.011(f) "impinges on his fundamental right to marry." *See Nat'l Rifle Ass'n of Am., Inc. v. McCraw,* 719 F.3d 338, 350 (5th Cir.2013) (stating that courts should strictly scrutinize a legislative classification that "impermissibly interferes with the exercise of a fundamental right"), *cert. denied,* — U.S. —, 134 S.Ct. 1365, 188 L.Ed.2d 297 (2014); *see also Johnson v. Rodriguez,* 110 F.3d 299, 316 (5th Cir.) (explaining that when government action only incidentally burdens a fundamental right, strict scrutiny is not warranted), *cert. denied,* 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). We need not resolve that argument because we conclude below that as applied to appellant, section 22.011(f) does not have a rational governmental basis.

9. We do not disagree with the State's argument that the "legislature has discretion in drawing lines that create sentencing range classifications." But those lines must gener-

*Texas,* 539 U.S. 558, 581, 123 S.Ct. 2472, 2485, 156 L.Ed.2d 508 (2003) (O'Connor, J., concurring); *see also Matchett v. State,* 941 S.W.2d 922, 934 (Tex.Crim.App.1996) (holding that there was no violation of equal protection because "those committing the same offense on the same day [were] subject to the same statutory scheme"), *cert. denied,* 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997). As applied here, section 22.011(f) does exactly that; the section treats appellant differently based on his status of being married than the section would treat an unmarried offender who had committed the same acts against Katie. As appellant contends, if he were "an unmarried man but all the other facts of this case were exactly the same, then [his sexual assault convictions] would have been [felonies] of the second degree." We conclude that appellant satisfies the first criteria of an equal protection challenge because he demonstrates that he is receiving different treatment than similarly situated offenders only because he is married and they are not. *See Downs,* 244 S.W.3d at 518; *see also Eisenstadt v. Baird,* 405 U.S. 438, 443, 454–55, 92 S.Ct. 1029, 1033, 1039, 31 L.Ed.2d 349 (1972) (holding that a law that allowed the distribution of contraceptives to prevent pregnancy to married couples but precluded such distribution to single persons violated equal protection).

We must therefore determine whether appellant's disparate treatment on account of his status of being married has at least a rational governmental basis. *See Downs,* 244 S.W.3d at 518. Legislative history materials indicate that the amendment to section 22.011(f) was motivated by a desire to curb sexual assaults committed in bigamous or polygamous relationships, including against children, under the guise

of religious freedom. *See Rosseau,* 396 S.W.3d at 553. The State concedes that section 22.011(f) "may have emanated from concerns about polygamy." Although not determinative of the constitutional issue before us, nothing in the record shows that the increased penalty based only on appellant's status of being married serves that rational purpose of the statute; the evidence does not show that appellant sexually assaulted Katie as part of an allegedly bigamous or polygamous relationship or under any ostensibly religious justification. *See id.* at 558 (stating that one valid purpose of section 22.011(f) is the punishment of bigamists who sexually assault their purported spouses).

The State proposes that one rational basis of section 22.011(f), as the provision applies to appellant, is to prevent the sexual exploitation of children "by those who would use the 'cloak of marriage' to gain access to children whose parents might be less cautious in sending their children to homes with married parents." Certainly, the government has a compelling interest in protecting the well-being of children. *See New York v. Ferber,* 458 U.S. 747, 756–57, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113 (1982); *Ex parte Fournier,* 473 S.W.3d 789, 790 (Tex.Crim.App.2015). The evidence in this case, however, does not show that appellant used his marital status to gain the trust of Katie or her parents. Katie's mother testified that she was aware that appellant was married and that she and her husband had a friendly and trusting relationship with appellant and his wife. But nothing in the record suggests that Katie's mother would have trusted appellant less or would not have allowed Katie to visit and stay at his house if he and his wife had displayed all other attributes of their relationship—including their

---

ally be drawn so that they affect similarly situated defendants in the same way. *See*

*Rosseau,* 396 S.W.3d at 557; *Downs,* 244 S.W.3d at 518.

cohabitation and their cooperative raising of children—while remaining legally unmarried. Nor does the record contain evidence that supports the general proposition that a defendant's status of being married creates greater opportunities and access for sexually assaulting children.[10]

The State also contends that the legislature "has a legitimate interest in protecting the institution of marriage."[11] In other words, the State appears to argue that the increased penalty of section 22.011(f) may be justified by the rationale of protecting the sanctity of appellant's marriage with his wife. But Texas long ago abandoned the notion of criminally penalizing adultery. *See Fleming v. State,* 455 S.W.3d 577, 600 (Tex.Crim.App.2014) (Keller, J., dissenting) (noting that the legislature repealed statutes outlawing fornication and adultery in 1973), *cert. denied,* —— U.S. ——, 135 S.Ct. 1159, 190 L.Ed.2d 913 (2015); *City of Sherman v. Henry,* 928 S.W.2d 464, 470 (Tex.1996), *cert. denied,* 519 U.S. 1156, 117 S.Ct. 1098, 137 L.Ed.2d 230 (1997). We cannot fathom that the legislature intends to resurrect that notion through the language contained in section 22.011(f). Moreover, if the legislature had wanted to protect the sanctity of marriage by penalizing sexual crimes more severely when they are also adulterous, it seems probable that the legislature would do so

by using more explicit language in section 22.011(f)[12] and by including similar language in other provisions of the penal code that define sex-related offenses. The legislature has not acted in these ways.

We note that the State's suggested application of the first-degree language in section 22.011(f) is extraordinarily broad. Through its briefing and its oral argument, the State proposes that under section 22.011(f), a sexual assault becomes a first-degree felony when the defendant is married but the victim is not, when the victim is married but the defendant is not, when the defendant and victim are both married but not to each other, or when the victim is too young to be married.[13] Therefore, under the State's suggested application of section 22.011(f), the increased penalty to a first-degree felony is avoided only when both the defendant and victim are unmarried and are of marrying age or when the defendant and the victim are married to each other (which is a construction that certainly does not protect the institution of marriage). Again, we cannot conclude that the legislature intended for the increased penalty under section 22.011(f) to apply in such an expansive fashion.

Other than what we have discussed above, the State proposes no rational basis for using section 22.011(f) and appellant's mere status of being married to convict

---

10. In oral argument, the State's counsel stated that having an "unrelated male in the household ... seems to be the norm of [sexual assault] cases."

11. The State made a similar argument in *Rosseau*; it contended that section 22.011(f) serves the State's interest in protecting spouses "of the individuals who are either the victim or the defendants in a case of sexual assault." 396 S.W.3d at 553. Here, the State contends, "[S]ociety has an obligation to protect and nourish the union of marriage.... Thus, the State may legitimately consider the responsibilities of marriage in making policy

decisions regarding appropriate punishment ranges."

12. We note that the first-degree language in section 22.011(f) is focused on the status of the victim and the defendant; nothing in the language indicates that the legislature was considering the impact of the crime on the defendant's or the victim's spouses. *See* Tex. Penal Code Ann. § 22.011(f).

13. *See* Tex. Fam. Code Ann. § 2.101 (West 2006) (stating that generally, a marriage license may not be issued if either applicant is under eighteen years old).

him of a first-degree felony instead of a second-degree felony. Therefore, we conclude that under the circumstances of this case and as applied to appellant, section 22.011(f) violates equal protection because it penalizes him differently than a similarly situated defendant without a rational basis for doing so. *See* U.S. Const. amend XIV; *Downs*, 244 S.W.3d at 518. We sustain appellant's first issue. Having concluded that section 22.011(f) violates equal protection as applied in this case, we decline to address appellant's argument that the application of the section in these circumstances also violates his due process rights. *See* Tex. R. App. P. 47.1; *Stillwell v. State*, 466 S.W.3d 908, 913 n. 7 (Tex.App.–Fort Worth 2015, no pet.).

■ Appellant contends that the equal protection violation renders his sexual assault convictions void; he asks us to reverse the convictions "and either order the prosecution of him dismissed or remand [the sexual assault counts] to the trial court to enter an order dismissing the prosecution." The State contends that the proper remedy is to remand the sexual assault convictions for a new punishment hearing.

Appellant does not contest the sufficiency of the evidence to support second-degree felony convictions for sexual assault. *See* Tex. Penal Code Ann. § 22.011(a)(2), (c)(1), (f). It would be an " 'unjust' windfall" for us to order dismissal or acquittal on the sexual assault charges based on a violation of appellant's constitutional rights relating only to an element that raised the offenses to the level of first-degree felonies. *See Thornton v. State*, 425 S.W.3d 289, 298 (Tex.Crim.App.2014). In the course of convicting appellant of sexual assaults as first-degree felonies, the jury must have found every element necessary to convict him of the charged sexual assaults as second-degree felonies. There-

fore, there is sufficient evidence to support second-degree felony convictions. *See id.* at 300. Thus, we conclude that we must affirm the sexual assault convictions as second-degree felonies but must remand those charges to the trial court for a new trial on punishment so that a factfinder may consider the proper punishment range for each. *See id.*; *Smith v. State*, Nos. 02–08–00394–CR, 02–08–00395–CR, 2010 WL 3377797, at *15–16 (Tex.App.–Fort Worth Aug. 27, 2010, no pet.) (not designated for publication) (holding that when the first-degree felony range of punishment under section 22.011(f) had been improperly applied to a defendant but the defendant had not challenged the sufficiency of the evidence to support second-degree felony convictions, the appropriate remedy was to "remand for a new trial on punishment alone"); *see also State v. Marroquin*, 253 S.W.3d 783, 785 (Tex.App.–Amarillo 2007, no pet.) (mem. op.) (stating that the remedy for an improper sentence is to "remand the case to the trial court for a new trial on the issue of punishment"); *Donnell v. State*, 191 S.W.3d 864, 870 (Tex.App.–Waco 2006, no pet.) (remanding for a new punishment hearing after concluding that a sentence was void).

### Voir Dire Objection

■ In appellant's second issue, he contends that the trial court abused its discretion by sustaining the State's objection to one of his voir dire questions. During appellant's voir dire of the jury panel, his counsel informed the panel about the potential ranges of punishment associated with the charges for sexual assault. Then, the following colloquy occurred:

[DEFENSE COUNSEL:] [C]an we give fair consideration to the full range of punishment? And here's the question. I want you to assume that you have found somebody guilty of sexual

assault of a child [with the bigamy enhancement] and they did each act as alleged in Count One or Count Two or Count Three or Count Four or Count Five....

...[C]ould you honestly ever fairly consider on this offense as little as five years in prison and give probation as an appropriate punishment?

[THE STATE]: Judge, I'm going to object as to an improper commitment question.

THE COURT: Sustained.

Appellant contends that the above question was proper because it sought to uncover grounds for a challenge for cause and because the jurors' answers would have helped him "intelligently exercise his peremptory challenges." The State argues, in part, that any error by the trial court in sustaining the State's objection to the question is harmless because appellant later asked the question in another manner.

▮▮▮▮ After the exchange quoted above, without further objection by the State, appellant's counsel engaged the panel in a prolonged discussion about whether the panel could give full consideration to the lowest end of the punishment range, including probation.[14] Error in restricting voir dire questions is not reversible unless it affects a defendant's substantial rights. See Tex. R. App. P. 44.2(b); Woods v. State, 152 S.W.3d 105, 109 & n. 15 (Tex. Crim.App.2004), cert. denied, 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005). "A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict." Woods, 152 S.W.3d at 109–10. When a trial court erroneously

restricts a defendant's ability to ask a question in voir dire but then allows the defendant to ask essentially the same question, the error is harmless. See id. at 110.

This is what happened here. Thus, assuming that the trial court erred by sustaining the State's objection to the question quoted above, we conclude that the error is harmless because appellant then proceeded with the same line of questioning without objection. See id.; Rachal v. State, 917 S.W.2d 799, 815 (Tex.Crim. App.), cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996); see also Sotelo v. State, No. 06–13–00149–CR, 2014 WL 492342, at *5 (Tex.App.–Texarkana Feb. 6, 2014, no pet.) (mem. op., not designated for publication) ("When counsel is able to ask 'essentially the same' question as the one disallowed, or to obtain essentially the same information, there is no harm."). We overrule appellant's second issue.

## Evidentiary Matters

In his third issue, appellant argues that the trial court abused its discretion and violated his constitutional rights of confrontation and due process by excluding some evidence that he desired to elicit from Katie. In his fourth issue, appellant contends that the trial court abused its discretion by excluding testimony of Shawn Gower, appellant's former brother-in-law, concerning Katie's possible motive in making the sexual assault claims against appellant. In his fifth issue, appellant contends that the trial court abused its discretion by admitting statements made by Katie to Hynson. In his sixth and eighth issues, appellant argues that the trial court abused its discretion by admitting evidence

14. Also, before appellant began his questioning of the panel, the State had questioned the panel about whether it could consider the full range of punishment, including probation, for the sexual assault offenses.

of his extraneous acts with his ex-wife and with a girl who lived in his neighborhood. Finally, in his seventh and ninth issues, appellant contends that the trial court erred by not giving a limiting instruction on the extraneous act testimony when the State's witnesses testified.

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *See Bosquez v. State*, 446 S.W.3d 581, 585 (Tex.App.–Fort Worth 2014, pet. ref'd) (mem. op.); *Sanders v. State*, 422 S.W.3d 809, 812 (Tex.App.–Fort Worth 2014, pet. ref'd). Thus, we do not reverse the exercise of that discretion if it is within the zone of reasonable disagreement. *Bosquez*, 446 S.W.3d at 585. A trial court does not abuse its discretion unless its ruling is arbitrary and unreasonable; the mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Foster v. State*, 180 S.W.3d 248, 250 (Tex.App.–Fort Worth 2005, pet. ref'd) (mem.op.).

### Exclusion of testimony by Katie

■ During a hearing outside of the jury's presence, Katie testified about various matters related to her sexual history and her participation in sex-related counseling.[15] Appellant asked the court to allow Katie to testify about all of this evidence to the jury. He argued that the evidence was relevant and of high probative value and contended that exclusion of the evidence would act

as a limit on [his] right to cross-examine and ... to present a complete defense, in violation of the Fifth, Sixth, [and] Fourteenth Amendments to the U.S. Constitution, [and] specifically Article 1, Section 10 of the [Texas] Constitution....

We also submit that this goes to her motive or bias. This is something the Court should consider as well. And for each and all of these reasons, we believe the Court should admit everything the Court just heard.

The State argued that the evidence was subject to exclusion under rule of evidence 412 and that admission of the evidence was not constitutionally required. The trial court sustained the State's objection to the admission of the evidence.

■ In a prosecution for sexual assault, rule of evidence 412, also known as Texas's "rape shield" law, generally excludes evidence concerning the victim's past sexual experiences. *See* Tex. R. Evid. 412(a); *McDonald v. State*, No. 02–13–00483–CR, 2015 WL 2353307, at *2 (Tex. App.–Fort Worth May 14, 2015, no pet.) (mem. op., not designated for publication). But evidence of specific instances of a victim's past sexual behavior is admissible when its probative value outweighs its danger for unfair prejudice and when it (1) is necessary to rebut or explain scientific or medical evidence offered by the prosecutor, (2) concerns past sexual behavior with the defendant and is offered by the defendant to prove consent,[16] (3) relates to the victim's motive or bias, (4) is admissible under rule of evidence 609, or (5) is consti-

---

**15.** The record from this hearing is sealed. *See* Tex. R. Evid. 412(d). Therefore, we will not discuss the details of the evidentiary matters of which appellant complains. See *Dees v. State*, Nos. 02–12–00488–CR, 02–12–00489–CR, 2013 WL 6869865, at *6 (Tex. App.–Fort Worth Dec. 27, 2013, pet. ref'd) (mem. op., not designated for publication).

**16.** Because Katie was younger than seventeen years of age at the time the sexual assaults occurred, consent cannot be an issue or defense to the State's allegations. *See McDonald*, 2015 WL 2353307, at *2.

tutionally required to be admitted. Tex. R. Evid. 412(b)(2)–(3). Rule 412 is designed to limit abusive, embarrassing, and irrelevant inquiries into a complainant's private life and to encourage victims of sexual assault to report those crimes. *See Dees*, 2013 WL 6869865, at *6.

On appeal, appellant contends that the trial court should have allowed Katie to tell the jury about the matters developed in the rule 412 hearing because the evidence was constitutionally required to be admitted and because the subjects of the evidence were appropriate for cross-examination. *See* Tex. R. Evid. 412(b)(2)(E). Specifically, he argues that exclusion of the evidence violated his rights of confrontation and due process. Appellant conditions his due process contention on his confrontation argument; thus, we must decide whether exclusion of this evidence violated appellant's right of confrontation.

 The Sixth Amendment grants defendants the right to confront witnesses against them. U.S. Const. amend. VI. This right includes the right to "cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex.Crim.App.2009) (footnote omitted). The Confrontation Clause guarantees an opportunity for effective cross-examination but not for "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985).

Here, appellant asserts that he was "denied his right to cross-examine his accuser about relevant facts that went directly to her credibility and the veracity of her testimony." More specifically, he argues,

> The State's case hinged on the credibility of [Katie]; [the State] offered no independent corroborating evidence to substantiate her testimony that [a]ppellant sexually assaulted her.... It latched [onto] whatever it could to bolster [Katie's credibility].... Carrie Paschall had testified that "a lack of sensory and peripheral details being provided by the child" is "a red flag" indicating that the child had been coached. She also testified that ... when [Katie] made a disclosure of sexual abuse, she was able to give her peripheral and sensory details.... Had the jury known about [the excluded evidence], [the jury] might reasonably have inferred that these details were genuine descriptions of [Katie's sexual history] and not [the acts of appellant].

 We cannot agree that the trial court abused its discretion by excluding the evidence based on this rationale.[17] We have explained that evidence may sometimes be admissible to show a child's alternate basis for knowledge of sexual matters. *Hale v. State*, 140 S.W.3d 381, 396 (Tex.App.–Fort Worth 2004, pet. ref'd). But to show the relevancy of a child victim's prior sexual conduct "as an alternate source of sexual knowledge, the defendant must establish that the prior acts clearly occurred *and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question.*" *Id.* (emphasis added); *see also Bryan v. State*, No. 02–08–00379–CR, 2010 WL 1137038, at *3 (Tex.App.–Fort Worth Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication) (citing *Hale* and concluding

---

17. We note that appellant did not explicitly present this theory of admissibility at the hearing leading to the exclusion of the evidence.

that evidence of the child victim's prior sexual experience was inadmissible because the defendant "failed to establish that the prior assault was sufficiently similar to Bryan's assault.").

Based on our review of the sealed record from the hearing outside of the jury's presence, we conclude that appellant failed to establish that Katie's sexual history so closely resembled the acts of the present case that it could explain Katie's knowledge about the wide array of sexual matters in question. *See Hale,* 140 S.W.3d at 396; *Matz v. State,* 989 S.W.2d 419, 423 (Tex.App.–Fort Worth 1999) (holding that prior acts were not sufficiently similar to be relevant), *rev'd on other grounds,* 14 S.W.3d 746 (Tex.Crim.App.2000). Thus, we conclude that the trial court did not abuse its discretion by excluding this evidence on that basis.[18] *See Bosquez,* 446 S.W.3d at 585.

Appellant also argues that "the evidence that [Katie] was seeing a counselor . . . might have aided the jury in assessing [Katie's] testimony." For that proposition, appellant cites only *Virts v. State,* 739 S.W.2d 25, 30 (Tex.Crim.App.1987). There, the court of criminal appeals held that in a capital murder case, a trial court should have admitted testimony that a co-defendant who testified against the defendant had been committed to a mental hospital for six weeks, had received months-long outpatient treatment for mental health issues, and had recently attempted suicide. *Id.* at 28–30. The court explained that "[c]ross-examination of a testifying State's witness to show that the witness has suffered a recent mental illness or disturbance is proper, provided that such

mental illness or disturbance is such that it might tend to reflect upon the witness's credibility." *Id.* at 30. The evidence of Katie's counseling in the sealed record is inapposite to the facts discussed in *Virts*; thus, we conclude that the trial court did not abuse its discretion by excluding the evidence of Katie's counseling on the basis offered by appellant.

For all of these reasons, we conclude that the trial court did not abuse its discretion by excluding Katie's testimony on the matters discussed above. *See Bosquez,* 446 S.W.3d at 585. We overrule appellant's third issue.

### Exclusion of testimony by appellant's former brother-in-law

■ Outside the presence of the jury, appellant called Shawn Gower, his former brother-in-law. Gower testified that he had been around Katie at appellant's house. He testified about events that had occurred at the house and Katie's reactions to those events.[19] Appellant urged the trial court to admit Gower's testimony, but the State objected on the ground that the testimony would do "nothing more than . . . trash the victim." The trial court excluded the testimony under rule of evidence 412 and on the ground that the testimony was irrelevant.

On appeal, appellant argues that the trial court abused its discretion by excluding Gower's testimony because it reflected on Katie's motive or bias. He focuses his appellate argument on a portion of Gower's testimony in which Gower stated that appellant had imposed strict rules on Katie and that Katie was unhappy with these restrictions, and he argues that her reaction established a motive for fabrication.

---

18. Appellant also briefly contends that evidence of Katie's sexual history "shows an obvious bias" on her part against appellant. We cannot agree with this unexplained assertion.

19. Because the record of this hearing is sealed, we will not detail Gower's testimony about these matters.

But in the trial court, appellant's theory of admissibility concerning Gower's testimony was not that the testimony reflected on Katie's motive or bias. Rather, after Gower's testimony outside of the jury's presence concluded, appellant urged the trial court to admit the testimony to the jury because it reflected on

> how [Katie] dressed and carried herself and carried on and that sort of thing .... And our contention is that to give the jury the full picture, able to present our full defense, *this stuff* needs to be in front of the jury....
>
> If the Court rules that it's not admissible, I'm going to instruct them not to get into this. But our proffer is that [Gower and other witnesses would say] *something about how [Katie] carried herself and that sort of thing.* [Emphasis added.]

■ Because appellant's trial-court theory of the admissibility of Gower's testimony does not comport with his arguments about Gower's testimony on appeal, we hold that he forfeited this argument for our review.[20] *See* Tex. R. App. P. 33.1(a)(1)(A) (stating that to preserve error, the party's objection in the trial court must state the grounds for the desired ruling unless those grounds are apparent from the context); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex.Crim.App.2005) ("[I]t is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible."); *Johnson v. State*, 963 S.W.2d 140, 142 (Tex.App.–Texarkana 1998, pet. ref'd) (holding that a party did not preserve error with regard to the exclusion of evidence because the theory of admissibility urged on appeal had not been presented

to the trial court). We overrule appellant's fourth issue.

### Admission of Hynson's testimony about Katie's statements

■ In his fifth issue, appellant contends that the trial court abused its discretion by allowing Hynson, the sexual assault nurse examiner, to testify about what Katie told her during the examination. In the trial court, after Hynson testified about her qualifications and her experience in performing sexual assault examinations, the State asked her what Katie had said had happened to her. Appellant objected to the question on hearsay and confrontation grounds, but the trial court overruled the objections, and Hynson told the jury about what Katie had said concerning appellant's acts of sexual abuse.

On appeal, appellant argues that Hynson's testimony about Katie's statements was inadmissible hearsay. The State contends that this testimony was admissible under an exception to the general exclusion of hearsay.

■ Hearsay is an out of court statement that a party offers to prove the truth of the matter asserted within the statement. *See* Tex. R. Evid. 801(d). Hearsay is generally inadmissible. Tex. R. Evid. 802. But the rule that typically excludes hearsay does not apply when the declarant made a statement for medical diagnosis or treatment and the statement describes "medical history[,] past or present symptoms or sensations[,] their inception[,] or their general cause." Tex. R. Evid. 803(4). "This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate

---

20. The State does not argue that appellant failed to preserve his fourth issue for our review, but we must review preservation of error on our own motion. *See Clay v. State*, 361 S.W.3d 762, 765 (Tex.App.–Fort Worth 2012, no pet.).

diagnosis and treatment." *Bautista v. State*, 189 S.W.3d 365, 368 (Tex.App.–Fort Worth 2006, pet. ref'd).

Before the trial court ruled on appellant's objection to the State's question about what Katie had told Hynson, Hynson testified that she is a registered nurse and a sexual assault nurse examiner and that she has examined hundreds of sexual assault complainants. She explained that when sexual assault complainants arrive for exams, she determines whether the complainants are medically stable and then asks the complainants "exactly what was going [on] *in order to be able to treat them, diagnose*, find out exactly where they—if they do need additional care." [Emphasis added.] Hynson testified that during the exams, she determines whether physical evidence—including DNA—of the alleged assaults may exist and also determines whether the complainants have physical injuries that may corroborate their complaints. Hynson explained that she needs to know what happened to the complainants to properly treat them.

Appellant contends that Hynson's testimony about Katie's statements is not excepted from hearsay under rule 803(4) because (1) the record does not demonstrate Katie's awareness that proper diagnosis depended on the veracity of her statements to Hynson; (2) knowing the identity of who sexually assaulted Katie was not pertinent to Hynson's treatment, (3) "nothing in the record supports a finding that [Katie's] statements about what [a]ppellant did to her aided Hynson in any material way in her diagnosis or treatment of [Katie]," and (4) "nothing was wrong with [Katie] that Nurse Hynson was qualified or equipped to treat."

■ We disagree. First, "unlike statements made to non-medical professionals, which require affirmative evidence in the record on the issue of veracity, courts can infer from the record that the victim knew it was important to tell a [sexual assault nurse examiner] the truth in order to obtain medical treatment or diagnosis." *Franklin v. State*, 459 S.W.3d 670, 677 (Tex.App.–Texarkana 2015, pet. ref'd); *see Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.–Fort Worth 1999, pet. ref'd) ("[T]here is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply."); *see also Swofford v. State*, Nos. 12–14–00081–CR, 12–14–00082–CR, 2015 WL 7019762, at *3 (Tex. App.–Tyler Nov. 12, 2015, no pet.) (mem. op., not designated for publication) ("The court of criminal appeals has not required the proponent of statements to a sexual assault nurse examiner to affirmatively demonstrate that the declarant was aware of the purpose of the statements and the need for veracity, and we decline to do so in this case.").

Second, even if Katie's statements to Hynson did not actually aid Hynson in discovering or treating any physical injuries, Hynson's testimony nonetheless establishes that Katie's statements were made for the purpose of diagnosis and treatment. *See* Tex. R. Evid. 803(4)(A); *Beheler*, 3 S.W.3d at 189 ("The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment.").

■ Third, the "identity of an offender falls within the ambit of [the rule 803(4) ] exception because it is relevant to treatment, particularly in incest and family violence cases, insofar as it presents an environmental and safety issue that could frustrate diagnosis and treatment." *Tre-*

*vizo v. State*, No. 08–12–00063–CR, 2014 WL 260591, at *7 (Tex.App.–El Paso Jan. 22, 2014, no pet.) (not designated for publication); *see also Bargas v. State*, 252 S.W.3d 876, 896 (Tex.App.–Houston [14th Dist.] 2008, no pet.) ("Because treatment of child abuse includes removing a child from an abusive setting, the identity of the abuser is pertinent to the medical treatment of the child.").

█ For all of these reasons, we conclude that the trial court did not abuse its discretion by admitting Hynson's testimony about Katie's statements to her. *See* Tex. R. Evid. 803(4); *Bosquez*, 446 S.W.3d at 585. We also note that the content of most of the statements made by Katie and relayed to the jury by Hynson, including the statements that identified appellant as Katie's sexual abuser, was admitted through other witnesses, including Katie. Indeed, appellant concedes on appeal that Katie's testimony "largely synced up" with Hynson's testimony about Katie's statements. Thus, even if the trial court had abused its discretion by admitting Hynson's testimony about these statements, we would hold that error to be harmless. *See* Tex. R. App. P. 44.2(b); *Brooks v. State*, 990 S.W.2d 278, 287 (Tex.Crim.App.) (holding that any error in the admission of hearsay was harmless in light of other properly admitted evidence proving the same fact), *cert. denied*, 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999); *Bensend v. State*, No. 02–11–00110–CR, 2012 WL 4815467, at *1 (Tex.App.–Fort Worth Oct. 11, 2012, pet. ref'd) (mem. op., not designated for publication) (concluding that any error in admitting the testimony of a sexual assault nurse examiner concerning statements the complainant had made was harmless because the "complainant herself had previously testified to [the]

same facts"). We overrule appellant's fifth issue.

## Admission of appellant's extraneous acts

█ In his sixth and eighth issues, appellant argues that the trial court abused its discretion by admitting evidence from two witnesses about his extraneous acts. Specifically, he contends in his sixth issue that the court abused its discretion by admitting testimony from his ex-wife about his interest in bondage sex, and he asserts in his eighth issue that the court abused its discretion by admitting testimony from a teenager who lived in his neighborhood about his sex-related acts toward her. He argues that the testimony of these witnesses was inadmissible under rules of evidence 403 and 404(b). *See* Tex. R. Evid. 403, 404(b). The State contends that the testimony was admissible because it rebutted appellant's defensive theories.

During appellant's case-in-chief, he elicited testimony from one of his neighbors and friends, John Reeves. Reeves testified that he had met Katie, that he had seen her a few times at appellant's house, and that he had never seen appellant act inappropriately around her. Appellant also called A.S. (Ashley), a seventeen-year-old girl who knew appellant and was a friend to appellant's daughter. Ashley testified that she never saw appellant act inappropriately toward anyone and that she never felt uncomfortable around him. Finally, appellant elicited testimony from his wife. Among many other facts, appellant's wife testified on two occasions on direct examination that appellant does not have a sexual interest in bondage; she explained that she possessed leather in the house because she and appellant made things with it.[21] On cross-examination, ap-

---

**21.** Before appellant's wife testified, Katie had testified that during some of her sexual en-

pellant's wife reiterated that appellant has "no interest" in bondage sex.

After appellant rested his case in chief, the State expressed its intent to present rebuttal evidence. First, the State proposed to elicit testimony from appellant's ex-wife. Outside of the jury's presence, she testified that she had engaged in bondage sex with appellant; she stated, "He would try and tie my hands at one time. And the other time he would tie my hands and my feet to the bed." She also explained that appellant had used a whip on her during sex. She testified that over the course of a nine-year marriage, she and appellant engaged in bondage sex two to four times.

The State also proposed to present testimony from J.M. (Jackie), who was sixteen years old at the time of the trial. Outside of the jury's presence, she testified that she lives on the same street as appellant and has been to his house numerous times to visit Jason. Jackie testified that on different occasions, appellant had asked her to spend the night in his room, had "smacked [her] butt," had touched her breast while looking down her shirt, had talked to her about the piercing of sexual organs, had told her that she was pretty, and had put the back of his head between her legs and against her clothed body while she was sitting down.

Appellant objected to the testimony from his ex-wife and from Jackie, arguing that it was inadmissible under rules of evidence 403 and 404(b). The trial court overruled the objections. Appellant's ex-wife and Jackie testified about these same facts to the jury.

Rule of evidence 403 states that a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. A trial court, when undertaking a rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex.Crim.App. 2006). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative that prejudicial. *Martinez v. State*, 327 S.W.3d 727, 737 (Tex.Crim.App.2010), *cert. denied*, 563 U.S. 1037, 131 S.Ct. 2966, 180 L.Ed.2d 253 (2011).

Under rule 404(b), evidence of a wrong "or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* Tex. R. Evid. 404(b)(1). But such evidence may be admissible for other purposes, including the rebuttal of a defensive theory. *See* Tex. R. Evid. 404(b)(2); *Williams v. State*, 301 S.W.3d 675, 687 (Tex.Crim.App.2009) ("Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence."), *cert. denied*, 560 U.S.

counters with appellant, he had tied her up with leather and that during one such encounter, he had struck her with a paddle.

Appellant's wife's testimony about appellant's alleged lack of interest in bondage was responsive to Katie's testimony.

966, 130 S.Ct. 3411, 177 L.Ed.2d 326 (2010); *Casey v. State*, 215 S.W.3d 870, 881 (Tex.Crim.App.2007); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App. 1991) (op. on reh'g) (stating that evidence about a defendant's extraneous acts may be admissible when it makes less probable defensive evidence that undermines an elemental fact). Like rule 403, rule 404(b) promotes the inclusion of evidence; the rule excludes only "evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App.2009).

Here, in appellant's case in chief, he presented defensive evidence with the intent to negate Katie's testimony concerning his sexual abuse. Specifically, appellant presented testimony from his wife, who attempted to undermine Katie's testimony that appellant had engaged in bondage sex. Appellant's wife testified that she had never known appellant to engage in any form of bondage sex and that the leather that the police had found in appellant's house was not used for bondage activities.[22] The trial court could have reasonably found that the testimony of appellant's ex-wife, which proved that appellant was interested in and had participated in bondage sex, rebutted the inference intended by appellant's wife's testimony, which was that Katie must have been fabricating the claim of bondage-related sex. *Cf. Victorian v. State*, No. 01–13–01004–CR, 2015 WL 3915966, at *7 (Tex.App.–Houston [1st Dist.] June 25, 2015, pet. ref'd) (mem. op., not designated for publication) ("When, as here, a defendant denies that the criminal act occurred and contends that the complainant fabricated her account, evidence of similar extraneous acts may be necessary to corroborate the complainant's account and rebut the defensive theory."); *Strother v. State*, No. 14–01–00078–CR, 2002 WL 15880, at *3 (Tex. App.–Houston [14th Dist.] Jan. 3, 2002, pet. ref'g) (op. on reh'g) (not designated for publication) ("Insofar as such a defense may be misleading, we hold that extraneous conduct evidence is admissible to fully inform the jury and rebut the defensive proffer.").[23]

Similarly, through appellant's development of testimony from Reeves and A.S., he attempted to characterize Katie's testimony as unreasonable and unlikely by presenting evidence that he generally acted appropriately around underage girls.[24]

---

**22.** The record belies appellant's argument that "it was actually the State who elicited" the evidence about bondage. At one point, appellant's counsel asked appellant's wife, "[A]re *or were either you or [appellant]* into any form of bondage?" [Emphasis added.] She said no. Later, the following exchange occurred:

 [DEFENSE COUNSEL:] You've been married many years to [appellant]; is that correct?

 A. Yes, 11 years.

 Q. And you've never known him to engage in any form of bondage sex; is that correct?

 A. No.

 Q. I mean, that's correct?

 A. That's correct, yes.

**23.** The principal cases that appellant relies on in his arguments under rule 404(b) are distinguishable. *See Fox v. State*, 283 S.W.3d 85, 93 (Tex.App.–Houston [14th Dist.] 2009, pet. ref'd) (holding that evidence of a defendant's cross-dressing was inadmissible when the defendant had not presented evidence creating a false impression about cross-dressing); *Kelly v. State*, 828 S.W.2d 162, 165 (Tex.App.–Waco 1992, pet. ref'd) (holding that extraneous offense evidence was inadmissible when it did not have a purpose other than showing character conformity).

**24.** It is evident from reading the record that this was the principal purpose of Reeves's and A.S.'s testimony.

Jackie's testimony about appellant's sexually inappropriate acts toward her rebutted this evidence. *Cf. Baker v. State*, No. 10–11–00449–CR, 2012 WL 5458474, at *7 (Tex.App.–Waco Nov. 8, 2012, no pet.) (mem. op., not designated for publication) ("Stacy's testimony showed that Baker acted inappropriately with other underage girls in the household and, thus, corroborated [the victim's] testimony and showed Baker's predilection for underage girls...."); *Mayfield v. State*, Nos. 02–05–00386–CR, 02–05–00387–CR, 2007 WL 938697, at *6 (Tex.App.–Fort Worth Mar. 29, 2007, pet. ref'd) (mem. op., not designated for publication) ("Thus, this 'Peeping Tom' evidence was probative because it was similar to the charged offense in that it demonstrated that Mayfield displayed an inappropriate sexual interest in teenage girls, thus rebutting Mayfield's defensive theory that he was the victim of a frame-up.").

Because the testimony of appellant's ex-wife and of Jackie rebutted appellant's defensive theories, the trial court could have reasonably found that the testimony had relevance apart from its tendency to show appellant's character and his actions in conformity therewith. Thus, we hold that the trial court did not abuse its discretion by overruling appellant's objections to the evidence under rule 404(b). *See* Tex. R. Evid. 404(b); *De La Paz*, 279 S.W.3d at 343.

 We must now determine whether the trial court abused its discretion by determining that rule 403 did not require exclusion of this evidence. *See* Tex.R. Evid. 403. Based on our analysis above, we conclude that the probative force of the testimony of appellant's extraneous acts, as it served to rebut the evidence and inferences developed by the witnesses appellant called, was strong.[25] The evidence related to a critical issue, which was whether Katie's story of sexual abuse by appellant could be trusted in light of the defensive evidence presented by appellant. In the jury charge, the trial court instructed the jury that it could consider appellant's extraneous acts only for specific purposes that were unrelated to character conformity. The testimony in front of the jury of appellant's ex-wife and Jackie comprise less than forty pages of the reporter's record, and the acts described by that testimony are less egregious than the sexual assaults described by Katie. *Cf. Roberts. v. State*, No. 02–10–00266–CR, 2011 WL 5607620, at *5 (Tex.App.–Fort Worth Nov. 17, 2011, pet. ref'd) (mem. op., not designated for publication) (stating that evidence of a defendant's extraneous act was not likely to impress the jury in an irrational and indelible way because the act was significantly less egregious than the offense that the defendant was charged with).

For these reasons, although we recognize that evidence of sexually related misconduct is inflammatory (particularly when that evidence involves children),[26] we con-

---

**25.** Again, the main cases relied on by appellant in his arguments under rule 403 are distinguishable. In one case, the State presented evidence to implant a story in the jury's mind and then attempted to present extraneous offense evidence to rebut the story it had developed. *See Bishop v. State*, 869 S.W.2d 342, 345 (Tex.Crim.App.1993). The court of criminal appeals held that the extraneous offense evidence was not admissible to rebut a defensive theory. *See id.* 345–46. In the other case, the extraneous offense did not rebut a defensive theory and was relevant only to character conformity and establishing the defendant's mental state. *See Bjorgaard v. State*, 220 S.W.3d 555, 560–61 (Tex.App.–Amarillo 2007), *pet. dism'd, improvidently granted*, 253 S.W.3d 661 (Tex.Crim.App. 2008).

**26.** *See Pawlak v. State*, 420 S.W.3d 807, 809 (Tex.Crim.App.2013).

clude that the trial court did not abuse its discretion by implicitly determining that the probative value of the testimony by appellant's ex-wife and by Jackie was not substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, or needless presentation of cumulative evidence. *See* Tex. R. Evid. 403; *Gigliobianco,* 210 S.W.3d at 641–42; *Bosquez,* 446 S.W.3d at 585.

We conclude that the trial court did not abuse its discretion by overruling appellant's objections under rules of evidence 403 and 404(b) to the admission of the extraneous act evidence described above.[27] *See Bosquez,* 446 S.W.3d at 585. Thus, we overrule appellant's sixth and eighth issues.

**Limiting instructions**

■ In his seventh and ninth issues, appellant argues that the trial court erred by not giving the jury limiting instructions concerning the testimony of appellant's ex-wife and Jackie at the time that those witnesses testified. *See* Tex. R. Evid. 105(a) (stating that when evidence is admissible for one purpose but not another, the trial court, on request, must give a limiting instruction to the jury). The State contends that appellant failed to preserve error on these issues because he did not object to the absence of a limiting instruction when these two witnesses testified to the jury. We agree with the State that appellant failed to preserve error.

At the hearing outside of the jury's presence in which the trial court overruled appellant's objections to the testimony of appellant's ex-wife and Jackie, appellant asked for limiting instructions on the testi-

mony of both witnesses, and the trial court stated that it would give one but did not specify when it would give one. Appellant did not renew his request for a limiting instruction when either appellant's ex-wife or Jackie testified in front of the jury. But in the jury charge, the trial court gave a limiting instruction on the use of the extraneous act evidence.

■ To preserve error for our review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court. *Fuller v. State,* 253 S.W.3d 220, 232 (Tex.Crim.App.2008), *cert. denied,* 555 U.S. 1105, 129 S.Ct. 904, 173 L.Ed.2d 120 (2009); *see* Tex. R. App. P. 33.1(a)(2). Appellant did not obtain an adverse ruling with respect to his requests for limiting instructions. Instead, the trial court granted his requests and gave such an instruction in the jury charge. "Without a specific request for a contemporaneous limiting instruction at the time the evidence was admitted, and without the [trial] court's denial of such a request, there is nothing for us to review." *Reyes v. State,* No. 03–10–00082–CR, 2011 WL 2507002, at *5 (Tex.App.–Austin June 24, 2011, no pet.) (mem. op., not designated for publication); *see also Wilson v. State,* 7 S.W.3d 136, 144 (Tex.Crim.App.1999) (holding that when a trial court answered a defendant's request for a limiting instruction by saying "okay" but did not give a contemporaneous limiting instruction, error was not preserved because "[e]ven if the trial court's response w[as] ... a favorable ruling, appellant was required to object when the circumstances appeared to show that the trial court's ruling was not being en-

---

**27.** Thus, we decline to address the arguments from appellant's sixth and eighth issues related to whether he was harmed by the admission of the extraneous act evidence. We note that although appellant contends in his dis-

cussion of harm that in the State's closing argument, it attempted to use the extraneous acts for character conformity purposes, appellant did not object to those parts of the State's closing argument.

forced"). We hold that appellant forfeited his complaints concerning the lack of a jury instruction at the time that appellant's ex-wife and Jackie testified, and we overrule his seventh and ninth issues. *See* Tex. R. App. P. 33.1(a); *Wilson*, 7 S.W.3d at 144.

### Alleged Cumulative Error

In his tenth issue, appellant contends that if "none of the errors in Issues [three] through [nine] are reversible per se, then the errors present cumulative error requiring reversal when considered together." We have concluded that no error occurred in the trial court with respect to the arguments raised in appellant's third through ninth issues. Thus, we overrule appellant's tenth issue concerning alleged cumulative error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000); *Ryser v. State*, 453 S.W.3d 17, 43 (Tex.App.–Houston [1st Dist.] 2014, pet. ref'd) ("Because we have concluded that there was no error, there can be no cumulative error or harm.").

### Conclusion

Having sustained appellant's first issue and having overruled his second through tenth issues, we affirm the trial court's judgments of conviction on appellant's charges for indecency with a child in all respects, modify the trial court's judgments on appellant's charges for sexual assault to reflect convictions for second-degree felonies, reverse the trial court's judgments on appellant's charges for sexual assault as to punishment, and remand the sexual assault cases to the trial court for a new trial on punishment only. *See* Tex. R. App. P. 43.2(a), (b), (d).