

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00401-CR
### NO. 02-13-00402-CR

ROLANDO BOSQUEZ          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1311910D, 1331026D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Rolando Bosquez appeals from his convictions for possession of a firearm by a felon and possession of a controlled substance. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. FACTS

During the early morning hours of January 21, 2013, Fort Worth Police Officer Benjamin Bucy was on patrol when he heard two "pops." Bucy then saw a red truck and a white truck speed toward him, with the red truck following the white truck. The driver of the white truck saw Bucy and started honking and waving his arms at Bucy. Bucy followed the trucks. The driver of the white truck pulled over, but the red truck continued on. Bucy approached the driver of the white truck who told Bucy that the "guy in that red truck just shot [at his white truck] two times." Bucy caught up to the red truck and pulled it over.

Bucy determined that the driver of the red truck was Appellant and his passenger was Alicia Happy. Bucy saw a gun on the seat between Appellant and Happy. Bucy searched the truck and found bullets, two spent casings, a gun holster, and four baggies appearing to contain methamphetamine. The methamphetamine was found in the driver's door panel and was later determined to weigh 6.34 grams. The red truck was registered to Appellant. Bucy arrested Appellant and gave him the required warnings. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (West Supp. 2014). Appellant waived his right to remain silent and gave Bucy a written statement in which he claimed that the driver of the white truck pulled out a pistol after they disagreed "on who was going first" at a traffic light. Appellant averred that when the driver of the white truck started to roll down his back window, Appellant "ducked and shoot [sic] in the air."

2

Appellant wrote that he "told the officer that guy had a gun" when Bucy pulled him over. A grand jury indicted Appellant for unlawful possession of a firearm (the January gun case) and for possession of one gram or more but less than four grams of methamphetamine (the January drug case). *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.115 (West 2010); Tex. Penal Code Ann. § 46.04 (West 2011).[2]

On June 18, 2013, while the January gun case and the January drug case were pending, Fort Worth Police Officer Anthony Tobar saw a red truck that had a nonworking license-plate light.[3] When Tobar stopped the red truck, Tobar determined that the driver was Appellant and that the red truck was registered in Appellant's name. When Tobar approached Appellant, he "could smell alcohol coming from within the vehicle and from within [Appellant's] breath." After searching the truck, Tobar found several small bags containing 20.48 grams of methamphetamine and scales under the driver's seat and a glass pipe with drug residue in the glove compartment. A grand jury indicted Appellant for possession with the intent to deliver more than 4 but less than 200 grams of

---

[2]The State alleged that a deadly weapon was used or exhibited in the January drug case. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2014).

[3]Tobar was familiar with the red truck because he had seen the same truck the day before and had determined that the truck's registration was expired. Tobar was unable to stop the truck, however, because the driver "quickly pulled into an apartment complex and quickly exited and began to enter a residence."

methamphetamine (the June drug case). *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.112 (West 2010).

## B. PROCEDURE

Before trial, the trial court granted the State's motion to consolidate the January gun case, the January drug case, and the June drug case into one trial. *See id.* § 481.132 (West 2010). The State also filed a motion in limine in the June drug case directed to any oral statements made by Appellant because they were self-serving and potentially inadmissible. *See Allridge v. State*, 762 S.W.2d 146, 152–54 (Tex. Crim. App. 1988) (discussing when self-serving declarations are admissible). This motion was agreed to by Appellant. In the January gun case and the June drug case, Appellant filed motions in limine also directed to his statements, including his statements given to police officers.

Appellant testified at trial and asserted that the driver of the white truck shot at Appellant before Appellant returned fire. Appellant explained that after the driver of the white truck shot at him, Happy handed Appellant a pistol he had never seen before and that he shot the gun into the air. Regarding the June drug case, Appellant testified that the drugs and paraphernalia may have been inadvertently left in his truck by his friend, J.P., who had done mechanical work on the truck on June 17, 2013, and had kept the truck until June 18—the day Tobar arrested Appellant.

During cross-examination of Appellant, the State questioned why Appellant's trial testimony was the first time Appellant accused the driver of the

4

white truck of shooting first in the January gun case. Appellant explained that his written statement included the fact that he "told the officer that he had a gun," that he thought he had written that the driver of the white truck had shot first in his statement, and that he had verbally told Bucy he had been shot at when Bucy pulled him over. The State asked Appellant how J.P. could have planted the drugs in his truck in the June drug case given Tobar's testimony that he saw Appellant driving the red truck on June 17. Appellant explained that when Tobar saw him on June 17, he was on his way to J.P.'s house to leave the truck.

At the conclusion of Appellant's testimony, Appellant's counsel requested that the video of Appellant's "arrest and interaction with Officer Tobar" in the June drug case be admitted into evidence as a prior consistent statement to rebut the State's fabrication allegation: "[Appellant] was explaining [to Tobar] that he just picked the car up from [his friend] just like he told the jury." The State argued that such evidence was inadmissible because it would improperly bolster Appellant's trial testimony and constituted hearsay. *See* Tex. R. Evid. 613(c), 801(d). The trial court denied Appellant's request but included the video in the appellate record. *See* Tex. R. Evid. 103. During the State's closing jury argument, the prosecutor argued that Appellant had "excuse after excuse after excuse" to explain the presence of the gun and the drugs. The prosecutor questioned whether it was "really reasonable that [Appellant] didn't know and these weren't his drugs" and again stressed that Appellant's written statement in the January gun case contained nothing "about the other car shooting at him."

5

The jury found Appellant not guilty in the January drug case. However, the jury found Appellant guilty in the January gun case and the June drug case and assessed his punishment at eight years' confinement and fifteen years' confinement, respectively.

## II. DISCUSSION

On appeal, Appellant raises a single point and asserts that the trial court erred by denying his request to admit the video of his discussion with Tobar in the June drug case to rebut the State's allegation of fabrication. We review a trial court's decision to exclude evidence for an abuse of discretion and will not reverse the exercise of that discretion if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). If an abuse occurred, we will not reverse the trial court's judgment unless the error affected a substantial right of the appellant, i.e., the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Walters v. State*, 247 S.W.3d 204, 218–19 (Tex. Crim. App. 2007); *Hammons v. State*, 239 S.W.3d 798, 806 (Tex. Crim. App. 2007); *see also* Tex. R. App. P. 44.2(b); Tex. R. Evid. 103(a).

In general, a witness's prior statement that is consistent with the witness's trial testimony is inadmissible hearsay. Tex. R. Evid. 613(c). A prior consistent statement is admissible, however, "to rebut an express or implied charge against the declarant of recent fabrication." Tex. R. Evid. 801(e)(1)(B). To fall within this hearsay exception, (1) the declarant must testify at trial and be subject to cross-

6

examination, (2) there must be an express or implied charge against the declarant of recent fabrication, (3) the statement must be consistent with the declarant's in-court testimony, (4) the prior consistent statement must be offered to rebut an express or implied charge of recent fabrication, and (5) the prior consistent statement must have been made before the alleged motive to fabricate arose. *See Tome v. United States*, 513 U.S. 150, 156–58, 115 S. Ct. 696, 700–01 (1995); *Hammons*, 239 S.W.3d at 804; *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996). To determine whether the cross-examination of a witness establishes an implied charge of fabrication, we consider the totality of the record and may look to such clues as voir dire, opening statements, and closing arguments. *See Hammons*, 239 S.W.3d at 808.

We first note that the State and Appellant seem to be talking past each other. The State asserts that the video from the June drug case could not be admitted to rebut the State's implication of fabrication in the January gun case. Appellant also seems to argue, at least in part, that the video of the June drug case should have been admitted to rebut the State's attack on Appellant's failure to include information in his written statement in the January gun case. But the video related to Appellant's verbal statements made to Tobar in the June drug case, not his written statement to Bucy in the January gun case. Appellant, however, additionally argues that the video was admissible to rebut the State's implication that he fabricated his testimony about how the drugs in the June drug case could have been found in his truck—J.P. left them there after fixing

7

Appellant's truck.[4] Appellant's specific argument on appeal is that "[t]he in-car video contained prior statements that were consistent with Appellant's testimony on the day of the trial; thus, the purpose of playing this video was to demonstrate a prior consistent statement." *See generally* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). Appellant testified at trial that he believed J.P. planted the drugs in his truck, and the State on cross-examination had Appellant reiterate that he believed J.P. had planted the drugs in his truck in the June drug case. The State questioned the credibility of Appellant's explanation during closing arguments.

The record shows that the State did not expressly or implicitly charge Appellant with recent fabrication in the June drug case. In the January gun case, the State expressly questioned the veracity of Appellant's trial testimony that the driver of the white truck shot first based on the lack of such a statement in Appellant's written statement to Bucy. But in the June drug case, the State did not imply that Appellant had recently fabricated his testimony that J.P. planted the drugs in the truck. In the June drug case, the State merely questioned Appellant's credibility, which does not equate to a charge of recent fabrication. *See* Tex. R. Evid. 611(b); *Linney v. State*, 401 S.W.3d 764, 781–82 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The totality of the State's questions on

[4]Appellant testified that he assumed J.P. uses drugs.

8

cross-examination regarding the June drug case merely attacked Appellant's general credibility and did not suggest that he had recently fabricated his story about J.P. or that he had consciously altered his testimony. *See Linney*, 401 S.W.3d at 781–82. *See generally Hammons*, 239 S.W.3d at 806 (explaining totality of cross-examiner's questions must be considered in deciding whether cross-examination implied an intent by the witness to fabricate and, thereby, opened the door to the admission of a prior consistent statement by the witness). Because there was no allegation of recent fabrication in the June drug case, the video was hearsay; thus, the trial court did not abuse its discretion by denying Appellant's request to introduce the video. *See* Tex. R. Evid. 613(c).

We respectfully disagree with the dissent's statement that "[i]f . . . Appellant's prior statement was offered only for the purpose of showing . . . that the words were spoken during Appellant's earlier exchanges with the officer and not recently fabricated for purposes of trial, then the statement is not hearsay." The exhibit not admitted in this case—the in-car video from the June drug case—does not include any prior statement, consistent or otherwise, relating to the January gun case, which is the case in which the State raised recent fabrication. Indeed, Appellant's written statement to Bucy in the January gun case was admitted into evidence.

Even if the State sufficiently implied recent fabrication in the June drug case, Appellant's statements to Tobar were not made before Appellant had a motive to fabricate. Appellant's videoed statement was made after Tobar pulled

9

Appellant over and found drugs in Appellant's truck. Appellant's motive to fabricate was present at the time of his stop and arrest in the June drug case as well as during trial. *See, e.g.*, *Marshall v. State*, No. 11-10-00057-CR, 2012 WL 424918, at *8 (Tex. App.—Eastland Feb. 9, 2012, pet. ref'd) (mem. op., not designated for publication) ("Because appellant had the same motive to lie at the time of his statement to his mother as he did during his testimony at trial, his statement to his mother on the night of the incident was not admissible to rebut a charge of recent fabrication."); *Johnson v. State*, 208 S.W.3d 478, 503–04 (Tex. App.—Austin 2006, pet. ref'd) ("The record shows that Lofton's motive to fabricate arose in the summer of 2002 . . . . Because Lofton's January 2003 statement was made after the motive to fabricate arose, it did not rehabilitate Lofton and was not admissible . . . ."). Because the record does not support admission of the video of Appellant's prior consistent statement under rule 801(e)(1)(B), it was inadmissible hearsay evidence. *See* Tex. R. Evid. 613(c). Therefore, the trial court did not abuse its discretion by denying its admission.

We further note that even if the dissent were correct and the trial court had abused its discretion by excluding the video, we would be compelled to analyze whether any harm arising from the error affected Appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); Tex. R. Evid. 103(a). Substantial rights are not affected by the erroneous exclusion of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355

10

(Tex. Crim. App. 2002). In the January gun case—the case in which the State charged recent fabrication—Appellant testified that his conduct satisfied every element of the offense charged. Appellant did not request that any defensive issues be submitted in the court's charge for the January gun case. In the context of the entire record, from voir dire through the trial court's charge to the jury, any error in excluding the video did not substantially or injuriously affect the jury's verdict. Thus, we must disregard any error in the exclusion of the video. *See* Tex. R. App. P. 44.2(b).

## III. CONCLUSION

Appellant's prior consistent statement in the June drug case was inadmissible hearsay. Because the trial court did not abuse its discretion by excluding this hearsay evidence, we overrule Appellant's sole point. We affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED: September 25, 2014

11