

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00221-CR

JUAN LUIS LOPEZ                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
### TRIAL COURT NO. 1312931D

----------

## MEMORANDUM OPINION[1]

----------

In one point, appellant Juan Luis Lopez appeals his conviction for aggravated assault with a deadly weapon. He argues that the trial court erred by excluding evidence concerning the history of his relationship with the victim. We hold that the trial court did not abuse its discretion by excluding the evidence, and we therefore affirm the court's judgment.

---

[1]See Tex. R. App. P. 47.4.

**Background Facts**[2]

G.C. (Gloria)[3] met appellant when he was fifteen years old. At that time, she was married to his uncle. She drove appellant and his sister to school and saw him regularly.

In 2009, when appellant was nineteen years old and after Gloria's romantic relationship with his uncle had ended, she engaged in an on-again-off-again romantic relationship with appellant. That relationship ended in 2012.

In January 2013, Gloria was living at a home in Fort Worth. Although Gloria did not know it at the time, appellant had a key to the home because he and his father had previously helped Gloria change a lock on a door there. One night that month, Gloria was sleeping with A.V. (Alex) at the home. Gloria awoke when she heard a door open.[4] While naked, she went toward the door and saw

---

[2]The facts in the first part of this section are based on the witnesses' testimony at trial. Appellant wrote a statement that contained other facts, and we will summarize that statement below.

[3]To protect the anonymity of people associated with this appeal, we will refer to them through pseudonyms. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[4]Gloria had hung bells on her door frame to hear if appellant opened it. She testified,

> Two times [appellant] had entered . . . the house knocking in the door and he had broken the lock. He had the habit of coming in in the early morning and . . . throwing open the door. When he and his father fixed the door[, it] was because I went to his father to tell [him] that my door didn't work because [appellant] had broken it two times. [Appellant] went to go buy the lock and he kept one of the keys. I didn't know it until afterwards. He told me.

2

appellant, who was pointing a gun toward her head. Appellant loudly told Gloria, "I'm going to kill you, bitch." He also said, "I'm . . . going to kill the one that's with you." Appellant told Gloria that earlier that night, he had entered the home, had seen Gloria and Alex sleeping together, and had left to get a gun. He also told her that he was going to "kill [her] because [she] hadn't come back to him." Appellant eventually placed the gun on Gloria's mouth and again said that he was going to kill her and Alex.

Appellant took Gloria out of the home while she was still naked. She asked if she could return to get a sweater, and he allowed her to do so. While still holding the gun to Gloria's head, appellant took her to a nearby alley.[5] His car was there. He put her in the car while continuing to point the gun at her, and he drove to a house where he and his parents lived. He told her that he was going to kill her there.

Alex called the police, and the police found appellant and Gloria at appellant's house. Appellant took the gun away from Gloria's head and then pointed it back at her face. He threatened to kill her and himself. Appellant's parents came out of the house; his father yelled to him, "What's wrong?" The police commanded appellant and Gloria to get out of the car. Appellant threw the gun out of the car and got out. Gloria also got out of the car. The police arrested appellant.

---

[5]Gloria testified that she believed that she "had to go with [appellant] or he would hurt [her]."

The next morning, appellant gave a written statement to the police. In the statement, he claimed that after he had been to a club and to a party, he decided to take a bottle to Gloria.[6] He wrote that when he got to Gloria's house, he "found her with another man[,] so [he] took off to [his] [h]ouse" to get a gun. He wrote that he then went back to Gloria's house, that he entered it with a key, that Gloria saw him with the gun, and that she became scared. He claimed that he took Gloria to his parents' house, that he told Gloria that he was going to kill himself, and that Gloria cried and told him not to. Finally, he wrote, "I decided to get out of my car [and threw] my gun under my car [and] went to the cops to get arrested."

A grand jury indicted appellant with aggravated kidnapping.[7] He retained counsel and pled not guilty. At trial,[8] Alex corroborated Gloria's testimony that appellant had threatened to kill Gloria and Alex. Alex explained that Gloria had blocked appellant from entering the room that Alex had been in, and he opined that if Gloria had not done so, appellant would have killed him.

After the parties concluded their presentation of evidence and arguments, a jury deliberated for less than thirty minutes and convicted appellant of the

---

[6]Appellant wrote that Gloria had asked him to buy the bottle for her the prior month and that he wanted to surprise her by delivering the bottle.

[7]*See* Tex. Penal Code Ann. § 20.04(b) (West 2011).

[8]At the time of the trial, Gloria was thirty-five years old, and appellant was twenty-five years old.

4

lesser-included offense of aggravated assault with a deadly weapon.[9]  Appellant

chose the jury to assess his punishment, but after the parties presented more

evidence and arguments, the jury could not reach a unanimous decision on the

punishment issue.  The trial court declared a mistrial concerning punishment.

Appellant and the State entered into a plea bargain that required appellant

to serve two years' confinement but allowed him to appeal the jury's finding of

guilt.   The  trial  court  entered  a  judgment  of  conviction  and  sentenced

appellant to two years' confinement.  The court certified his right to appeal "the

guilt[-]innocence phase."  He brought this appeal.

**Exclusion of Evidence**

In his only point, appellant contends that the trial court erred by excluding

evidence concerning the origin and history of his relationship with Gloria.  We

review a trial court's decision to exclude evidence for an abuse of discretion and

do not reverse the exercise of that discretion if it is within the zone of reasonable

disagreement.  *Bosquez v. State*, 446 S.W.3d 581, 585 (Tex. App.—Fort Worth

2014, pet. ref'd) (mem. op.); *Hailey v. State*, 413 S.W.3d 457, 468 (Tex. App.—

Fort Worth 2012, pet. ref'd).

Outside of the jury's presence, before appellant's cross-examination of

Gloria began, his counsel proposed to ask her questions about whether she had

---

[9]*See id.* § 22.02(a)(2) (West 2011); *see also Girdy v. State*, 213 S.W.3d 315, 319 (Tex. Crim. App. 2006) (holding that aggravated assault may be a lesser-included offense of aggravated kidnapping).

5

an intimate relationship with appellant when he was fifteen years old and she was twenty-six years old. The trial court allowed appellant to make a proffer. During the proffer, Gloria testified that although she knew appellant before he turned eighteen years old, she did not have a sexual relationship with him at any time before he was nineteen years old.

The trial court denied appellant's request to ask Gloria in front of the jury whether she had sexual relations with appellant while he was underage. The court found that such questions were not relevant and that even if they were relevant, the probative value of that evidence was substantially outweighed by the danger of unfair prejudice.

Similarly, appellant proposed to present testimony from his sister and father about Gloria's alleged intimacy with appellant while he was underage. He contended that such evidence was "relevant to the relationship between the parties," to Gloria's alleged "influence over him," and to Gloria's "prior hold over [him]." He also contended that the evidence was admissible to impeach Gloria's testimony. The State contended, in part, that there was not a sufficient logical link between Gloria's alleged past acts with appellant and his charge in the trial court to make the past acts relevant. The trial court again ruled that such evidence was not relevant and that even if it was relevant, it was substantially more prejudicial than probative.

Only relevant evidence is admissible. Tex. R. Evid. 402. Evidence is relevant when it has any tendency to make a fact of consequence "more or less

6

probable than it would be without the evidence."  Tex. R. Evid. 401; *see Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) ("A bedrock condition of admissibility of evidence in any legal contest is its relevance to an issue in the case—that is to say, its tendency to make a fact of consequence to determination of the action more or less probable.").  A fact is "of consequence" in the guilt-innocence phase of a trial when it relates to whether the defendant committed the charged offense.  *See Cueva v. State*, 339 S.W.3d 839, 881 (Tex. App.—Corpus Christi 2011, pet. ref'd); *Longoria v. State*, 148 S.W.3d 657, 660 (Tex. App.—Houston [14th Dist.] 2004, pets. ref'd); *see also Mayes v. State*, 816 S.W.2d 79, 84 (Tex. Crim. App. 1991) (explaining that consequential facts are those "which have something to do with the ultimate determination of guilt or innocence in a particular case").  "It is important, when determining whether evidence is relevant, that courts examine the purpose for which the evidence is being introduced.  It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved."  *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citation omitted).

Under these standards, we cannot conclude that the trial court abused its discretion by excluding the evidence of the history of appellant's relationship with Gloria on the ground that the evidence was irrelevant.  *See* Tex. R. Evid. 401, 402; *Bosquez*, 446 S.W.3d at 585.  The trial court could have reasonably found that Gloria's alleged intimacy with appellant when he was underage did not make his commission against her of any of the three offenses included in the jury

7

charge—aggravated kidnapping, kidnapping, and aggravated assault—more or less likely. *See* Tex. R. Evid. 401(a); *Mayes*, 816 S.W.2d at 84.

On appeal, appellant contends that the evidence of Gloria's relationship with him while he was underage was relevant because it could have demonstrated to the jury "the near total control over [appellant] that Gloria had maintained from that time until the date of the incident." But the trial court could have rationally determined that the extent of Gloria's alleged control over appellant while their romantic relationship was ongoing was not material to whether he committed an offense against her after the relationship had ended. We cannot agree with appellant's contention that if the jury had learned about Gloria's alleged intimacy with appellant while he was underage—several years before the January 2013 incident—the jury "would have been more likely to believe [appellant's] claim that he had a firearm in his possession only to facilitate his intended suicide, rather than to threaten Gloria." In this respect, the trial court could have reasonably found that there was no direct or logical connection between the tendered evidence and the proposition. *See Layton*, 280 S.W.3d at 240.

Appellant also contends that the evidence should have been admitted to impeach Gloria's testimony about when her intimate relationship with appellant began. Gloria testified on direct examination that her relationship with appellant lasted from 2009 to 2012. We agree with the State's argument, however, that the trial court could have reasonably found that the year in which appellant's

8

sexual intimacy with Gloria began and his age at that time were collateral issues that were not proper subjects of impeachment. *See Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990) (reciting the general rule that a party is not entitled to impeach a witness on a collateral matter and explaining that the "test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea"); *see also Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984) (stating that a collateral matter "is one which seeks only to test the [witness's] general credibility, or relates to facts irrelevant to the issues at trial"); *Garza v. State*, 18 S.W.3d 813, 822 (Tex. App.—Fort Worth 2000, pet. ref'd) (applying the rule). Here, for the reasons explained above, the trial court could have reasonably determined that the evidence at issue bore no logical relationship to proving or disproving appellant's guilt and that the evidence was therefore immaterial, collateral, and inadmissible.

For these reasons, we hold that the trial court did not abuse its discretion by excluding evidence of the alleged intimacy that occurred between appellant and Gloria while he was underage on the basis that it was irrelevant.[10] *See Bosquez*, 446 S.W.3d at 585; *see also* Tex. R. Evid. 401, 402. We overrule appellant's sole point.

---

[10]Therefore, we need not address appellant's argument concerning the trial court's alternative finding that even if relevant, the evidence was subject to exclusion under rule of evidence 403 because it was substantially more prejudicial than probative. *See* Tex. R. Evid. 403; *see also* Tex. R. App. P. 47.1.

9

## Conclusion

Having overruled appellant's only point, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 12, 2016

10