

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00218-CR

_____

HECTOR MARTINEZ PERALEZ JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1740511

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

A jury convicted Appellant Hector Martinez Peralez Jr. of two counts of aggravated sexual assault of a child and acquitted him of another count of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). The jury found that Peralez had previously been convicted of sexual assault of a child, and it assessed his punishment at life imprisonment for each conviction. The trial court sentenced him accordingly with the sentences to run concurrently. In three issues, Peralez argues that (1) the trial court abused its discretion by excluding a prior consistent statement from a witness, (2) the trial court's jury charge contained error, and (3) he was denied effective assistance of counsel at trial. We will affirm.

## II. BACKGROUND

### A. The Relationship Between Peralez and the Complainant's Grandmother and the Complainant's Outcry of Abuse

A.B. (Aubrey)[1]—the complainant in this case—lived with her mother, father, and older sister in an apartment in Fort Worth. Aubrey's paternal grandmother (Grandmother) lived in a nearby unit in the same apartment complex. Grandmother managed the apartment complex.

---

[1]To protect the complainant's anonymity, we use aliases to refer to her, her paternal grandmother, and another victim of Peralez's abuse. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

In or around 2016, Grandmother started dating Peralez, and he moved into her apartment, where the two of them shared a bedroom. Once or twice a month, Aubrey and her sister would go over to Grandmother's apartment, and Grandmother would look after them while their parents did other things. Aubrey and her sister called Peralez "[P]apa."

In May 2022—when Aubrey was seven—she made an outcry of sexual abuse to her parents. Aubrey relayed that Peralez had "put his tongue between her legs," that she had been "told to put her mouth on it,"[2] and that he had "put his fingers inside of her." Aubrey indicated that the abuse had occurred "multiple times." Police were called to respond to Aubrey's outcry, and she was referred to Alliance for Children, a children's advocacy center.

## B. The Forensic Interview

In June 2022, Aubrey was forensically interviewed at Alliance for Children. During the interview, she was asked about the "first" and "last" times that she was sexually abused by Peralez.

As to the first time Aubrey was abused by Peralez, she stated that she had gone into Grandmother and Peralez's bedroom to get under a blanket on the bed because

---

[2]Aubrey's father testified that when Aubrey relayed that she had been told to "put her mouth on it," he understood that to refer to Peralez's "private area."

3

she was cold, and Peralez then got into the bed.[3]  Aubrey told the interviewer that Peralez used his finger to touch her "private part" underneath her clothing.  She stated that Peralez then had her go into the bathroom, where he put his "private part" in her mouth.  Aubrey told the interviewer that Peralez stopped putting his "private part" in her mouth when Grandmother came in the room.  Aubrey then clarified that Grandmother had not seen Peralez abusing her.[4]  Aubrey stated that Peralez told her not to tell anyone about the abuse.

As to the last time she was abused by Peralez, Aubrey's description of the abuse to the forensic interviewer largely mirrored her description of the first time she was abused.[5]  To that end, Aubrey again stated that she had gone into Grandmother and Peralez's bedroom because she was cold.  She stated that Peralez "stuck his finger in her private part," he told her to go into the bathroom, and he put his "private part" in her mouth while they were in the bathroom.  Aubrey told the interviewer that Peralez stopped when Grandmother "walked in," and he told Aubrey to "pretend to wash . . . her hands."  Aubrey again clarified that Grandmother did not know that

---

[3]At one point during the interview, Aubrey stated that she was six years old the first time she was assaulted by Peralez, although during a later point in the interview, she indicated that she had been five years old when the abuse started.

[4]The forensic interviewer testified that it was her understanding that the assault stopped because Peralez had heard Grandmother approaching.

[5]Aubrey stated that she was six years old the last time she was assaulted by Peralez.

Peralez was abusing her and that Grandmother had never seen the abuse happen. Aubrey also stated that Peralez had never touched her "private part" with something other than his finger.

## C. The Sexual Assault Examination

In July 2022, Aubrey was taken to Cook Children's Medical Center for a sexual assault examination. Aubrey told the sexual assault nurse examiner (SANE nurse) that Peralez had "touched [her] privates" and had "made [her] put his private in [her] mouth." Aubrey indicated that these incidents had occurred on "[m]ultiple" occasions in Grandmother and Peralez's bedroom whenever Grandmother "was busy or in the kitchen." In her notes, the SANE nurse noted that Aubrey had described "vaginal contact" by Peralez's "finger/hand" and "oral copulation of genitals" of "patient by assailant" and of "assailant by patient." The SANE nurse found no physical injury to Aubrey and no physical evidence of sexual abuse.

## D. The Indictment

Peralez was arrested in July 2022. A grand jury indicted him on the following three counts: (1) Peralez's mouth contacting Aubrey's sexual organ (Count One), (2) his sexual organ contacting her mouth (Count Two), and (3) his finger penetrating her sexual organ (Count Three).[6] The case proceeded to a jury trial in August 2023.

---

[6]Peralez was also indicted on a fourth count that was later waived.

## E. Relevant Trial Testimony

At trial, Aubrey testified that the abuse had occurred on five occasions.[7] As to the first instance of abuse, Aubrey stated that Peralez had called her into his bedroom while Grandmother was making lunch in the kitchen.[8] Aubrey indicated that Peralez had told her to get into the bed, so she got into the bed. She stated that Peralez "put his finger" on her "private area" underneath her clothes and then told her to leave the room. Aubrey testified that she told her parents about the abuse that day.

As to the other occasions of abuse, Aubrey stated that Peralez "kept doing the same thing over and over again." Aubrey initially stated that she did not remember whether Peralez had ever put his mouth on her "private part," but she later stated that she did not want to talk about Peralez putting his mouth on her "private part." She also testified that Peralez had put his "private part" in her mouth "in the bedroom" and that she had never been in the bathroom next to Peralez's bedroom; later during the trial, however, she stated that she had been in the bathroom when Peralez put his "private" in her mouth.[9] Aubrey testified that Peralez had touched her privates on the

---

[7]Aubrey was nine years old at the time of trial.

[8]At trial, Aubrey stated that she was "either six or five" when Peralez first abused her.

[9]A couple of weeks before trial, Aubrey told prosecutors and an investigator that nothing had ever happened with Peralez in the bathroom and that Peralez had never put his "private part" in her mouth. An investigator testified that Aubrey had seemed "nervous" and "scared" during that meeting.

third, fourth, and fifth incidents; had put his "private part" in her mouth during all five incidents; and had put his mouth on her privates during two of the incidents. Aubrey also testified that Grandmother had never seen her in the bathroom with Peralez.

Grandmother was a defense witness at trial. She testified that Peralez had told her from "day one" that he was a sex offender. Due to his previous conviction, she attempted to keep any children in her apartment separate from him. She maintained, however, that she kept the children separated from Peralez to protect him, stating that she "didn't want him to ever, ever go through this again." While she tried to keep the children separate from Peralez, she acknowledged that she sometimes would have to leave the apartment for "a few minutes" to deal with other tenants in the apartment complex. Grandmother testified that she never saw Peralez in the bathroom with Aubrey and that she never saw him sexually abusing Aubrey. While Grandmother was no longer in a relationship with Peralez at the time of trial, she stated that she still loved him, that she would always love him, and that he had "never hurt a child and he never would."[10]

Another witness, L.O. (Lindsay), testified about Peralez's prior instances of sexual abuse. Lindsay, who was thirty-seven at the time of trial, testified that Peralez

---

[10]Grandmother also stated that Peralez had no hair on his genitals. Aubrey had told the forensic interviewer that she tasted Peralez's hairs when he put his "private parts" in her mouth.

had been married to her aunt. Lindsay described to the jury how Peralez had sexually abused her on multiple occasions beginning when she was around four years old.[11] Lindsay testified that she did not initially tell anyone about the abuse because Peralez had threatened her mother.

## F. The Jury's Verdict

The jury ultimately convicted Peralez of Counts Two and Three, but it acquitted Peralez of Count One. After the trial court sentenced him to life imprisonment in conformity with each guilty verdict, Peralez filed this appeal.

## III. DISCUSSION

## A. Exclusion of Prior Consistent Statement

In his first issue, Peralez argues that the trial court abused its discretion by excluding a prior consistent statement from Grandmother that established that she was not fabricating her testimony out of fear of Peralez.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Under that standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the "zone of reasonable disagreement." *Id.* If the trial court's

---

[11]Lindsay also testified that she had once witnessed Peralez sexually abusing his daughter while he was changing her diaper.

8

evidentiary ruling is correct on any applicable theory of law, we will not disturb it. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## 2. Applicable Law

Generally, a witness's prior statement that is consistent with the witness's trial testimony is inadmissible hearsay. *Bosquez v. State*, 446 S.W.3d 581, 585 (Tex. App.— Fort Worth 2014, pet. ref'd) (mem. op.); *see* Tex. R. Evid. 613(c) ("Unless Rule 801(e)(1)(B) provides otherwise, a witness's prior consistent statement is not admissible if offered solely to enhance the witness's credibility."). A prior consistent statement is admissible, however, to rebut an express or implied charge against the declarant of recent fabrication. *Bosquez*, 446 S.W.3d at 585 (citing Tex. R. Evid. 801(e)(1)(B)). "[T]here need be only a suggestion that the witness consciously altered his testimony in order to permit the use of earlier statements that are generally consistent with the testimony at trial." *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007). To trigger this hearsay exception, (1) the declarant must testify at trial and be subject to cross-examination, (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent, (3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony, and (4) the prior consistent statement must be made before the supposed motive to falsify arose. *Id.* (citing *Tome v. United States*, 513 U.S. 150, 156–58, 115 S. Ct. 696, 700–01 (1995)); *see also Bosquez*, 446 S.W.3d at 585.

9

### 3. Analysis

Here, Grandmother testified that in October 2022, while Peralez was in jail, she made a 911 call in which she reported that he had threatened to kill her on three occasions. Grandmother told the jury, however, that Peralez had never directly threatened to kill her; rather, that threat had been relayed by one of his children. According to Grandmother, she was intoxicated when she made the 911 call, and she could not remember making it. She also stated that no one had tried to influence her testimony.

Following Grandmother's testimony regarding the 911 call, Peralez offered into evidence a portion of his recorded interview with police following his July 2022 arrest. During that portion, Peralez and Grandmother spoke on the phone. In that conversation, Grandmother expressed incredulity at Peralez's being arrested for sexually assaulting Aubrey. Grandmother stated that Peralez was never home long enough to assault Aubrey, that Aubrey and the other kids in the apartment were always by her side while they were in the apartment, and that committing an act of sexual assault was time-consuming. Peralez offered that exhibit as a prior consistent statement. The State objected to the recorded interview based on hearsay, and the trial court sustained the State's objection.

Here, there is no dispute that the recorded interview meets three of the four required elements to fall within the hearsay exception. *See Hammons*, 239 S.W.3d at 804. To that end, (1) Grandmother testified at trial and was subject to cross-

10

examination, (2) there was an implied charge of recent fabrication or improper influence in that she had made a 911 call in which she stated that Peralez had threatened to kill her, and (3) the prior consistent statement (a recorded interview from July 2022) was made prior to the time the supposed motive to falsify arose (the 911 call was made in October 2022). *See id.* The element that *is* in dispute is whether the offered prior statement is consistent with Grandmother's challenged in-court testimony. *See id.* We will assume, without deciding, that this element has also been met, and, thus, we will assume, without deciding, that the trial court abused its discretion by excluding the proffered portion of the recorded interview.

Because the assumed error is not constitutional, we apply Rule 44.2(b). Tex. R. App. P. 44.2(b); *see Bosquez*, 446 S.W.3d at 587. That Rule requires us to disregard any nonconstitutional error that does not affect an appellant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). In deciding that question, we consider (1) the character of the alleged error and how it might be considered in connection

11

with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence supporting the verdict, and (4) whether the State emphasized the complained-of error. *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

Here, the subject portion of the recorded interview simply reflected that Grandmother did not believe the charges against Peralez and she believed that he would not have had time to sexually assault Aubrey when Grandmother babysat her. Similar evidence was admitted during Grandmother's testimony at trial; thus, any error in excluding it was harmless. *See Womble v. State*, 618 S.W.2d 59, 62 (Tex. Crim. App. [Panel Op.] 1981) ("This court has consistently held reversal is not required by exclusion of evidence where the same testimony was later admitted without objection."); *Pierce v. State*, No. 05-12-00940-CR, 2013 WL 4017432, at *4 (Tex. App.—Dallas Aug. 7, 2013, pet. ref'd) (not designated for publication) ("It is well settled that an error in admission or exclusion of evidence is cured where the same evidence comes in elsewhere without objection."). Moreover, any suggestion that Grandmother's trial testimony regarding the assault was fabricated was discounted by other testimony—Grandmother's testimony that she had been intoxicated during the 911 call, her testimony that she had not been directly threatened by Peralez, her testimony that she loved Peralez and did not believe that he would ever hurt a child,

12

and Aubrey's statements that Grandmother did not know about the assault and had not seen it occur.

In addition, the evidence demonstrating Peralez's guilt was strong. During her outcry, the forensic interview, the sexual assault examination, and the trial, Aubrey maintained that Peralez's sexual organ had contacted her mouth and that his finger had penetrated her sexual organ. *See Hutson v. State*, No. 05-22-00662-CR, 2023 WL 3735229, at *4 (Tex. App.—Dallas May 31, 2023, no pet.) (mem. op., not designated for publication) ("The testimony of a victim alone, even if that victim is a child, is sufficient to support a conviction for sexual assault of a child."); *Arriaza v. State*, No. 02-21-00128-CR, 2023 WL 2806255, at *2 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication) ("The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault.").

We conclude that, in the context of the entire case against Peralez, the trial court's error, if any, in excluding the prior consistent statement from Grandmother did not have a substantial or injurious effect on the jury's verdict and did not affect Peralez's substantial rights. *See King*, 953 S.W.2d at 271–73. Thus, we must disregard the error. *See* Tex. R. App. P. 44.2(b). We overrule Peralez's first issue.

## B. Charge Error

In his second issue, Peralez argues that the trial court's jury charge "failed to instruct the jury that it must be unanimous as to the particular event underlying each of the counts alleged in the indictment."

### 1. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

### 2. Charge Analysis

A jury charge's purpose is to inform the jury of the law applicable to the case and to guide them in its application. *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019). A trial court has a duty to instruct the jury on the law applicable to the case regardless of any objection to the charge by the defendant. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see* Tex. Code Crim. Proc. Ann. art. 36.14. The trial court is ultimately responsible for the accuracy of the jury charge and the accompanying instructions. *Vega*, 394 S.W.3d at 518.

Jury unanimity is required in all felony cases by the Texas Constitution, and it is required in all criminal cases by statute. *See* Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. arts. 36.29(a), 37.02, 37.03, 45.034, 45.036; *see also Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). "This means that the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011) (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)); *see Ngo*, 175 S.W.3d at 745 ("Unanimity

14

in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act.").

"[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions." *Cosio*, 353 S.W.3d at 772. In such a case, each of the multiple incidents individually establishes a different offense. *Id.* To satisfy the unanimity requirement in such a situation, "the jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt." *Id.* at 776. The failure to include such an instruction in the jury charge is error. *See id.* at 772, 774; *Manrrique v. State*, No. 02-19-00458-CR, 2021 WL 4205011, at *11 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication).

Here, the jury charge alleged three different counts of aggravated sexual assault of a child: (1) Peralez's mouth contacting Aubrey's sexual organ, (2) his sexual organ contacting her mouth, and (3) his finger penetrating her sexual organ. The State presented evidence that Peralez had committed these various offenses on multiple but separate occasions; accordingly, the trial court erred by failing to include more than a general unanimity instruction in the charge.[12] *See Cosio*, 353 S.W.3d at 772, 774; *Brown*

---

[12]The State argues that a specific unanimity instruction was not required under the facts of this case, pointing out that "the jury charge contained three different

15

*v. State*, No. 02-22-00190-CR, 2023 WL 4779490, at *6 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op., not designated for publication) ("[B]ecause the State presented evidence that [the appellant] had committed a variety of sexual acts with [the complainant] on multiple but separate occasions, the trial court erred by failing to include a more specific unanimity instruction in the sexual-assault and indecency jury charges."); *Hopkins v. State*, No. 03-16-00746-CR, 2018 WL 1660831, at *8 (Tex. App.—Austin Apr. 6, 2018, no pet.) (mem. op., not designated for publication) ("The State presented evidence that [the] appellant committed the various sexual abuse offenses alleged on multiple but separate occasions over the course of [the complainant's] childhood. . . . Therefore, the trial court should have included an incident-unanimity instruction in the jury charge.").

In its brief, the State points out that "[t]he jury charge stated three separate times that the jury's verdict must be unanimous" and that "[t]he trial court orally instructed the jury that its verdict must be unanimous." But each of those instructions merely spoke of unanimity in general; the instructions did not tell the jury that "it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt." *Cosio*, 353 S.W.3d at 776. Thus,

_____

counts, each relating to a single separate and distinct offense." That argument misses the mark. The unanimity issue presented in this case is not merely that Peralez was charged with three distinct offenses; the issue is that the jury heard evidence that Peralez had committed each of the offenses on multiple but separate occasions.

16

the general unanimity instructions given by the trial court did not obviate the need for a more-specific unanimity instruction. *See id.* at 773 ("Although the instruction's 'boilerplate' section informed the jury that it must be unanimous, the jury could have understood it to mean that they had to be unanimous about the offense in general, not a particular incident comprising the offense."); *Rodriguez v. State*, No. 02-18-00057-CR, 2019 WL 406167, at *3 (Tex. App.—Fort Worth Jan. 31, 2019, no pet.) (mem. op., not designated for publication) ("[T]he charge contained only a general unanimity instruction that failed to alert the jurors that they needed to be unanimous about which incident formed the basis of each of the counts of aggravated sexual assault of a child. Based on the general unanimity instruction and the evidence showing that there were multiple instances of aggravated sexual assault occurring on unspecified dates, there was the possibility of nonunanimous verdicts."); *Hopkins*, 2018 WL 1660831, at *8 ("Generic statements regarding unanimity . . . are insufficient to prevent a non[]unanimous verdict.").

### 3. Harm Analysis

Having determined that the trial court erred, we now turn to harm. Because Peralez did not raise his unanimity complaint with the trial court, we will reverse only if the trial court's error resulted in egregious harm. *See Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*,

17

398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. In examining the record to determine whether charge error has resulted in egregious harm, we consider the actual degree of harm in light of (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Id.* at 171.

As to the entirety of the charge, as stated above, the jury charge permitted nonunanimous verdicts based on the evidence presented in the case regarding multiple instances of sexual abuse. Nothing in the charge mitigated this conclusion. Accordingly, we conclude that this factor weighs in favor of a finding of egregious harm. *See Rodriguez*, 2019 WL 406167, at *5 (concluding that entirety of charge weighed in favor of egregious harm where it "permitted nonunanimous verdicts based on the evidence presented in the case regarding multiple instances of sexual abuse").

As to the state of the evidence, as detailed above, Aubrey maintained—during her outcry, the forensic interview, the sexual assault examination, and the trial—that

18

Peralez's sexual organ had contacted her mouth and that his finger had penetrated her sexual organ. Peralez's defensive theory was that there were inconsistencies in Aubrey's story and that no abuse had occurred. Under those circumstances—where a complainant testifies about several instances of similar abuse and a defendant maintains that none of the instances occurred—there is little risk of a nonunanimous verdict. *See Nguyen v. State*, No. 14-18-00063-CR, 2021 WL 1881180, at *9 (Tex. App.—Houston [14th Dist.] May 11, 2011, no pet.) (mem. op., not designated for publication) ("The court of criminal appeals has repeatedly emphasized that there is little risk of a non[]unanimous verdict in cases such as this, where one side argues a theory of repeated sexual abuse, and the other side denies any abuse occurred."); *Rodriguez*, 2019 WL 406167, at *3 ("[B]ecause the evidence reflected that there was a first incident (which [the complainant] testified about in detail) and almost-daily incidents thereafter (for which [the complainant] did not provide much detail or distinguish between), there is 'no remotely significant risk' of a nonunanimous verdict."); *Ruiz v. State*, 272 S.W.3d 819, 826–27 (Tex. App.—Austin 2008, no pet.) (holding that state of the evidence weighed against finding egregious harm when defendant did not argue that he was guilty of only some of complainant's allegations of sexual abuse but instead argued that he had not committed any of the alleged conduct, leaving the jury with an all-or-nothing decision). We conclude that this factor weighs against a finding of egregious harm.

19

As to the arguments of counsel, neither the State nor Peralez told the jurors that they must be unanimous about which act of aggravated sexual assault constituted each charged offense, nor were they told that they need not be unanimous. This factor weighs neither for nor against a finding of egregious harm. *See Rodriguez*, 2019 WL 406167, at *7; *Smith v. State*, 515 S.W.3d 423, 431 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("Here, neither the State nor defense counsel made any reference to a unanimity requirement; therefore, this factor does not weigh for or against an egregious-harm finding.").

As to any other relevant information revealed by the trial record as a whole, we note that Peralez was acquitted of Count One. *See Rodriguez*, 2019 WL 406167, at *7 ("Other relevant evidence that we may consider is whether the jury rejected one of multiple counts."). But we note that the evidence pertaining to Count One was markedly weaker than the evidence pertaining to Counts Two and Three. To that end, Aubrey did not mention in her forensic interview that Peralez's mouth had contacted her sexual organ; indeed, she told the forensic interviewer that Peralez had never touched her "private part" with something other than his finger. Moreover, at trial, Aubrey initially testified that she could not remember whether Peralez had ever put his mouth on her "private part," but she later stated that she did not want to talk about Peralez putting his mouth on her "private part" before stating that he had done so on two occasions. Given that evidence, coupled with Peralez's theory that he had not committed any of the assaults, this factor weighs neither for nor against a finding

20

of egregious harm. *See Maxwell v. State*, No. 08-14-00027-CR, 2016 WL 6426784, at *8 (Tex. App.—El Paso Oct. 31, 2016, no pet.) (not designated for publication) ("If the jury had believed Appellant's theory [that the complainant had fabricated the allegations against him], it would have found him not guilty of all of the counts of indecency. Instead, in finding Appellant guilty of two of the four counts of indecency towards [the complainant], the jury necessarily disbelieved Appellant's defensive evidence.").

Only one of the four factors—the entirety of the charge—weighs in favor of a finding of egregious harm. In light of our analysis of these four factors and after reviewing the appellate record, we cannot conclude that the charge error affected the very basis of the case, deprived Peralez of a valuable right, vitally affected the defensive theory, or made a case for conviction clearly and significantly more persuasive. Accordingly, we hold that he was not egregiously harmed by the erroneous charge. *See Arrington v. State*, 451 S.W.3d 834, 839–40 (Tex. Crim. App. 2015) (holding appellant was not egregiously harmed by charge that omitted unanimity instruction when entirety of charge was the only factor weighing in favor of egregious harm); *Cosio*, 353 S.W.3d at 777–78 (same); *Rodriguez*, 2019 WL 406167, at *7 (same). We overrule Peralez's second issue.

## C. Ineffective Assistance of Counsel

In his third issue, Peralez argues that he was denied effective assistance of counsel because his trial counsel "failed to effectively counter impermissible arguments made by the State during closing argument."

### 1. Standard of Review and Applicable Law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava*, 415 S.W.3d at 307. The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A reviewing court need not address both deficiency and prejudice if the appellant makes an insufficient showing on one component, nor must a reviewing court address deficiency and prejudice in any particular order. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See id.* at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–

22

Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

### 2. Peralez's Complaints

Peralez complains that he was denied effective assistance of counsel on three occasions during the State's closing argument.

First, Peralez complains that his trial counsel should have objected when a prosecutor told the jury, "And, you know, they've spent this entire trial convoluting what people have said, misrepresenting things to you. That's -- that's all they're good for. I'm not going to give that oxygen." According to Peralez, this remark suggested

that the defense was "acting unethically and in bad faith" and was "perhaps an egregious manifestation of striking at the defendant over the shoulder[] of defense counsel." *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g) ("[I]t is fair to say that a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character.").

Second, Peralez complains that his trial counsel should have objected when a prosecutor told the jury, "[O]ur job at the district attorney's office is [to] do the right thing. . . . That's not [defense counsel's] job." According to Peralez, this remark was "blatantly improper under well-settled precedent." *See Wilson v. State*, 938 S.W.2d 57, 60 (Tex. Crim. App. 1996) (holding that prosecutor's comment about his oath to seek justice and defense counsel's lack of oath was "manifestly improper").

Third, Peralez points to the following exchange during the State's closing argument to suggest that a prosecutor improperly commented on his demeanor during trial:

> [Prosecutor]: . . . . And, you know, when [Aubrey] was on the stand, she identified this picture of [Peralez]. And he was -- you know, hunched down and couldn't even -- he didn't even have the guts to look at her while she testified.
>
> [Defense Counsel]: Objection, Your Honor. That's a misstatement of everything and an improper jury argument.

24

[Trial Court]: Well, I'm going to sustain the objection at this time. The jury will recall the evidence that they've seen.

[Prosecutor]: It's because he's scared. He's scared of her. [Aubrey] was scared of him at one point, but now she has the power back. You guys are going to give her that power back.

Peralez argues that "[t]he State was plainly prohibited from this line of argument under well[-]settled precedent in the Court of Criminal Appeals." *See Wead v. State*, 129 S.W.3d 126, 130 n.8 (Tex. Crim. App. 2004) ("We have recognized that, during closing argument at the guilt/innocence phase, a prosecutor may not properly comment upon the defendant's demeanor in the courtroom, since the defendant's demeanor in the courtroom is not evidence of guilt.") (citing *Good v. State*, 723 S.W.2d 734, 737 (Tex. Crim. App. 1986)). According to Peralez, his trial counsel should have asked the trial court to instruct the jury to disregard the prosecutor's comment after the trial court sustained his objection. Peralez further argues that his trial counsel should have objected "when the State persisted on with the same line of argument that the [trial court] had just sustained."

### 3. Analysis

In its brief, the State does not suggest that the complained-of arguments by the prosecutor were proper. Rather, the State argues that "[t]he record is not sufficiently developed for this court to make a determination of ineffective assistance of counsel" and that Peralez "has not met his burden of proving deficient performance or prejudice." We agree.

Here, the record is silent regarding why Peralez's trial counsel did not object to the first two complained-of remarks by the prosecutor. As to the third complained-of remark, the record is silent regarding why Peralez's trial counsel did not ask the trial court to instruct the jury to disregard the prosecutor's comment after the trial court sustained his objection, nor does it reflect why Peralez's trial counsel did not object to the comment from the prosecutor that followed the trial court's sustaining of his objection. Based on this record, we cannot say that Peralez's trial counsel was deficient. *See Menefield*, 363 S.W.3d at 593 ("Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." (quotation omitted)); *Baugus v. State*, No. 02-22-00015-CR, 2023 WL 3370718, at *13 (Tex. App.—Fort Worth May 11, 2023, pet. ref'd) (mem. op., not designated for publication) (holding that because appellant "d[id] not point to anything in the record indicating why his trial counsel failed to make . . . objections" to complained-of jury arguments, appellate court "cannot say that [appellant's] trial counsel's performance was deficient"); *Panchol v. State*, No. 02-12-00228-CR, 2013 WL 3874763, at *9 (Tex. App.—Fort Worth July 25, 2013, pet. ref'd) (mem. op., not designated for publication) ("The record is absolutely silent regarding counsel's reasons for not objecting to [the complained-of jury argument made by the State during closing]. . . . That being the case, Appellant has failed to show by a preponderance of the evidence that counsel was deficient.").

Further, we are unable to say that no competent attorney would have acted as Peralez's trial counsel did during the State's closing argument. Indeed, Peralez's trial counsel may have thought that objecting to the complained-of comments would draw the jury's attention to them, as would the trial court's instructing the jury to disregard the prosecutor's comment after the trial court sustained the objection. *See Bennett v. State*, No. 07-21-00223-CR, 2022 WL 2230473, at *2 (Tex. App.—Amarillo June 21, 2022, no pet.) (mem. op., not designated for publication) ("It could well be that counsel's decision to forgo an objection was a strategical decision. Indeed, courts have recognized that withholding objection to avoid garnering more attention on a matter can be reasonable trial strategy."); *Cueva v. State*, 339 S.W.3d 839, 892 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) (holding that counsel's decision not to object to jury argument may have been a strategic decision "to avoid highlighting such an argument"); *see also Brantley v. State*, No. 02-19-00349-CR, 2021 WL 3679239, at *4 (Tex. App.—Fort Worth Aug. 19, 2021, pet. ref'd) (mem. op., not designated for publication) ("[W]e may not speculate regarding why trial counsel acted as he did and must presume that a reasonable trial strategy supported his conduct."). Thus, we hold that Peralez has not met his burden of showing by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms.[13] *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Because he has not shown

---

[13]We recognize that an attorney's isolated acts or omissions generally do not constitute deficient performance. *See, e.g., Ingham v. State*, 679 S.W.2d 503, 509 (Tex.

deficient performance, he necessarily cannot show prejudice by any deficiency. *See*

*Nava*, 415 S.W.3d at 307. We overrule Peralez's third issue.

## IV. CONCLUSION

Having overruled Peralez's three issues, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 25, 2024

---

Crim. App. 1984). We note that the record reflects that Peralez's trial counsel filed several pre-trial motions, that he vigorously cross-examined the State's witnesses, that he lodged objections to certain of the State's evidence, and that he called several witnesses on Peralez's behalf. We further note that Peralez was ultimately acquitted of one of the charges against him. *See Chandler v. State*, No. 01-08-01017-CR, 2010 WL 457444, at *3 (Tex. App.—Houston [1st Dist.] Feb. 11, 2010, pet. ref'd) (mem. op., not designated for publication) ("Appellant has not shown that counsel's failure to object resulted in ineffective assistance; in fact, counsel's efforts resulted in the acquittal of appellant for one of the charges against him.").